# United States Court of Appeals
## For the First Circuit

---

No. 05-1282

JOHN CONTEH,

Petitioner,

v.

ALBERTO GONZALES, Attorney General,

Respondent.

---

PETITION FOR REVIEW OF A FINAL ORDER

OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Selya, <u>Circuit Judge</u>,
Hug,\*\* <u>Senior Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.

---

<u>Maunica Sthanki</u>, with whom <u>Theodore N. Cox</u> was on brief, for petitioner.
<u>Margot Nadel</u>, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom <u>Peter D. Keisler</u>, Assistant Attorney General, and <u>Greg D. Mack</u>, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

---

August 22, 2006

---

\*Of the Ninth Circuit, sitting by designation.

**SELYA**, <u>Circuit Judge</u>.  This case requires us to answer, for the first time, the question of how to determine whether an alien has been convicted of an aggravated felony for purposes of the Immigration & Nationality Act (INA).  Following what it termed a "modified categorical approach," the Board of Immigration Appeals (BIA) concluded, based on an array of materials, that the petitioner's conviction for conspiracy to commit bank fraud was a conviction for an aggravated felony.  <u>See</u> 8 U.S.C. § 1101(a)(43).  Accordingly it ordered removal.  <u>See</u> <u>id.</u> § 1227(a)(2)(A)(iii).  Although the BIA may have strayed too far afield in examining materials relevant to this determination, we agree, based exclusively on properly consulted materials, that the petitioner's conspiracy conviction qualifies as a conviction for an aggravated felony.  The petitioner was, therefore, removable.

This conclusion does not end our odyssey, as the petitioner's armamentarium includes two other claims of error.  Both of these claims are unavailing.  First, we lack jurisdiction to entertain his fact-based challenge to the BIA's denial of his cross-application for withholding of removal.  Second, the BIA's denial of the petitioner's motion to reopen or remand — a motion aimed at allowing him to pursue a waiver of inadmissibility and a concomitant adjustment of status — is unimpugnable.  When all is said and done, we deny the petition for review in part and dismiss it in part for want of jurisdiction.

## I.  BACKGROUND

The petitioner, John Conteh, is a native of Sierra Leone. He arrived in the United States as a non-immigrant visitor on January 5, 1995, and seasonably sought asylum.  On July 9, 1997, the Immigration and Naturalization Service (INS) approved his application.[1]

Approximately one year later, a federal grand jury in the Southern District of New York indicted the petitioner on four counts stemming from his alleged involvement in a bank-fraud scheme.  Count 1 of the indictment alleged that the petitioner "willfully . . . and knowingly . . . conspired . . . to commit crimes against the United States" in violation of a generic conspiracy statute, 18 U.S.C. § 371 (which provides in pertinent part that "[i]f two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be [punished as provided]").  Specifically, this count charged the petitioner with participating in "a scheme and artifice to defraud a financial institution . . . by means of false and fraudulent pretenses."  See id. § 1344.  It further charged that

---

[1]The Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (2002) (codified as amended at 6 U.S.C. § 291(a)), abolished the INS and transferred its functions to the Department of Homeland Security.  See Lattab v. Ashcroft, 384 F.3d 8, 13 n.2 (1st Cir. 2004).  For simplicity's sake, we refer throughout to the INS.

the petitioner "did make, utter, and possess a counterfeited security of an organization . . . with intent to deceive another person." See id. § 513(a). Finally, it recounted a series of overt acts in furtherance of the charged conspiracy, including the deposit of a counterfeit check in the amount of $25,200 into an account at Dime Savings Bank; the subsequent withdrawal of $22,600 and $1,000 from that account; the deposit of a second counterfeit check, this one in the amount of $29,239.06, into an account at Chase Bank; and the subsequent withdrawal of a total of $9,000 from that account.

Counts 2 and 3 charged the petitioner with violating 18 U.S.C. §§ 1344 and 513(a), respectively, in connection with the transactions involving the Chase account. Count 4 (which is of no relevance here) alleged that the petitioner knowingly made false statements to a federal agent during an investigation into the fraud. See id. § 1001(a).

A jury found the petitioner guilty on counts 1 and 4 but not guilty on counts 2 and 3. The presentence investigation report (PSI Report) concluded, inter alia, that the petitioner's participation in the conspiracy "caused an attempted loss of $54,439.06." At the disposition hearing, the district court refined this calculation; it found the petitioner responsible for actual losses of $9,000 sustained by Chase and $25,200 sustained by First Vermont Bank and Trust (the drawee of the counterfeit check

deposited into the Dime Savings account). The court imposed an incarcerative term of a year and a day and ordered the petitioner to make restitution in the amount of $34,200 (the court's calculation of the victims' actual loss). Judgment issued on July 24, 2000. The Second Circuit thereafter affirmed the conviction and sentence. <u>United States</u> v. <u>Conteh</u>, 2 F. App'x 202 (2d Cir. 2001).

In due course, the INS initiated proceedings against the petitioner, alleging that he had been convicted of an aggravated felony and, therefore, was subject to removal. <u>See</u> 8 U.S.C. § 1101(a)(43)(M)(i) (classifying as an aggravated felony any offense that involves fraud or deceit in which the loss to the victim(s) exceeds $10,000); <u>id.</u> § 1101(a)(43)(U) (classifying as an aggravated felony any attempt or conspiracy to commit any substantive offense enumerated in 8 U.S.C. § 1101(a)(43)); <u>see also id.</u> § 1227(a)(2)(A)(iii) (providing that an alien convicted of an aggravated felony is removable). The petitioner admitted the INS's factual allegations,[2] but denied that grounds for his removal existed. He also cross-applied for withholding of removal, <u>see id.</u> § 1231(b)(3)(A), and protection under the Convention Against Torture (CAT), <u>see</u> 8 C.F.R. §§ 208.16-208.18.

_____

[2]These admissions included acquiescence in the allegation that the conspiracy caused more than $10,000 in victim loss. However, the immigration judge later allowed the petitioner to retract this admission. The BIA did not treat the withdrawn admission as binding, nor do we.

The initial round of immigration hearings came to naught; those hearings culminated in a remand for an entirely new proceeding before a different immigration judge (IJ) and, therefore, are not material to the issues before us. Consequently, we eschew a blow-by-blow account, save to note that along the way the petitioner waived his CAT claim.

On remand, the petitioner claimed that the conspiracy offense did not amount to an aggravated felony because the record of conviction failed to establish the requisite amount of victim loss. He premised this argument on the notion that only those losses admitted by him or found by the jury in the criminal proceeding could be applied toward the $10,000 loss threshold. The IJ disagreed and held that the petitioner had committed an aggravated felony. Moving to the next issue, the IJ found that the petitioner had failed to demonstrate a clear probability of future persecution in his native land and, thus, had not established an entitlement to withholding of removal. See id. § 208.16(b)(2). Accordingly, the IJ ordered the petitioner removed to Sierra Leone.

The petitioner appealed. In his brief to the BIA, he suggested for the first time that his wife, who was then in the process of becoming an American citizen, had filed a visa petition on his behalf and that, therefore, he might be eligible for a waiver of inadmissibility and a discretionary adjustment of status. See 8 U.S.C. §§ 1182(h)(1)(B), 1255(a). The petitioner did not

submit an application for either the waiver or the adjustment, see 8 C.F.R. § 1003.2(c)(1); did not allege that his wife would be subject to extreme hardship if the removal order was executed against him, see 8 U.S.C. § 1182(h)(1)(B); and failed to proffer evidence that an immigrant visa was immediately available to him, see id. § 1255(a).

The BIA affirmed the removal order. Applying what it cryptically termed a "modified categorical approach," it held that the indictment, judgment, and PSI Report, in combination with the petitioner's testimony at the removal hearing, conclusively established that the conspiracy offense constituted an aggravated felony. The BIA also affirmed the IJ's denial of withholding of removal, citing evidence of changed country conditions as well as a dearth of evidence of likely future persecution based on the petitioner's political opinions. Finally, the BIA treated the petitioner's solicitation of a waiver of inadmissibility and an adjustment of status as a motion to reopen and denied it because of his failure to make a prima facie showing of eligibility for either form of relief. This timely petition for review followed.

## II. ANALYSIS

In this venue, the petitioner argues that the BIA erred in (i) holding that his conspiracy conviction qualifies as a conviction for an aggravated felony; (ii) determining that he did not satisfy the criteria for withholding of removal; and (iii)

refusing to reopen his case for further perscrutation of his waiver of inadmissibility and adjustment of status claims.  We discuss his contentions in that order.

### A.  The Aggravated Felony Determination.

The petitioner's principal plaint is that the BIA erred in characterizing his conspiracy offense as an aggravated felony. The BIA's determination that a given violation of a state or federal criminal statute constitutes an aggravated felony presents a pure question of law and, accordingly, engenders de novo review. See Aguiar v. Gonzáles, 438 F.3d 86, 88 (1st Cir. 2006); see also Urena-Ramirez v. Ashcroft, 341 F.3d 51, 53-54 (1st Cir. 2003).

### 1.  The Statutory Framework and the Categorical Approach.

The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).  The Act gives substance to the term "aggravated felony" by setting out a list of enumerated offenses that come within its scope.  See id. § 1101(a)(43).  This compendium includes "an[y] offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," id. § 1101(a)(43)(M)(i), as well as "an attempt or conspiracy to commit" such an offense, id. § 1101(a)(43)(U).  The government bears the burden of proving removability by clear and convincing evidence, see id. § 1229a(c)(3)(A), and, by extension, must carry the devoir of persuasion as to an alien's conviction for an aggravated felony.

-8-

The INA does not prescribe a detailed methodology for determining whether a predicate offense fits within these definitions (and, thus, qualifies as an aggravated felony). Where uncertainty exists, however, virtually every court of appeals faced with the question has sought some form of guidance from the categorical approach devised by the Supreme Court for use in the criminal sentencing context. See Emile v. INS, 244 F.3d 183, 187 & n.3 (1st Cir. 2001) (collecting cases). The BIA has followed suit, citing the leading Supreme Court precedent, Taylor v. United States, 495 U.S. 575 (1990), in a number of aggravated felony decisions.[3] See, e.g., Matter of Alcantar, 20 I&N Dec. 801, 812 (BIA 1994). The BIA applied what it deemed a "modified categorical approach" in the instant case.

Taylor involved the construction of a section of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). 495 U.S. at

---

[3]In most circumstances, courts accord deference to the BIA's reasonable interpretation of a silent or ambiguous provision of the INA. See INS v. Cardoza-Fonseca, 480 U.S. 421, 448-49 (1987); Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984); Urena-Ramirez, 341 F.3d at 54 n.3. Normally, this might well include deference to the BIA's authoritative definition of the parameters of offenses enumerated in the aggravated felony statute, 8 U.S.C. § 1101(a)(43). See Emile, 244 F.3d at 185. By the same token, the BIA's choice of methodology might be regarded as an interpretation of the INA and, thus, entitled to a degree of judicial deference. See Drakes v. Zimski, 240 F.3d 246, 250-51 (3d Cir. 2001) (leaving this issue unresolved). But in aggravated felony cases, the BIA has taken a passive stance, electing to apply the law of the circuit in which the case arises. See In re Yanez-Garcia, 23 I&N Dec. 390, 396-98 (BIA 2002). Given this stance, we engage in de novo review.

599-602. That section prescribes a mandatory minimum sentence with respect to any conviction for possession of a firearm by a defendant having a minimum of three prior convictions for "violent felon[ies] or serious drug offense[s]." 18 U.S.C. § 924(e)(1). In a manner reminiscent of the INA's treatment of aggravated felonies, the ACCA defines "violent felony," in part, by reference to a list of exemplary offenses. See id. § 924(e)(2)(B)(ii).

For determining whether a prior conviction subsumes a violent felony (and, thus, a predicate offense for ACCA purposes), the Supreme Court devised a categorical approach. See Taylor, 495 U.S. at 600. This categorical approach consists of two steps. See id. at 602. Where a violation of the statute underlying the prior conviction necessarily involves every element of an offense listed in section 924(e)(2)(B)(ii), the mere fact of conviction establishes that the putative predicate crime was a violent felony. Id. Where, however, the underlying statute spans, but is broader than, the listed offense (i.e., where it encompasses some conduct that would constitute a violent felony and some conduct that would not), the putative predicate offense qualifies as a violent felony only "where a jury was actually required to find all the elements" of the listed offense. Id. In that circumstance, a sentencing court charged with determining what the jury actually was required to find cannot retry the original case but, rather, must restrict

its inquiry to the record of conviction, including the charging document and jury instructions.  See id.

The Court later extended the categorical approach to cases in which the prior conviction results from a guilty plea rather than from a jury verdict.  See Shepard v. United States, 544 U.S. 13, 19-20 (2005).  In rejecting the government's contention that a sentencing court could rest its characterization of the putative predicate offense on facts contained in a police report, the Justices reiterated that the appropriate inquiry is "confined to records of the convicting court."  Id. at 23.  That inquiry thus includes "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  Id. at 16.  In other words, a sentencing court may conclude that a guilty plea subsumed a violent felony only when the record of conviction makes manifest that the defendant's plea necessarily constituted an admission to every element of a listed offense.  See id. at 26.

We previously have introduced the Taylor-Shepard categorical approach into an immigration-related context.  Under the federal sentencing guidelines, a prior conviction for an offense designated as an aggravated felony in 8 U.S.C. § 1101(a)(43) may trigger an upward enhancement in the total offense level referable to certain immigration-related offenses, including

-11-

illegal reentry after deportation.  See USSG §2L1.2(b)(1)(C).  We have held that the Taylor-Shepard categorical approach governs the determination of whether an alien's prior offense qualifies as an aggravated felony for this purpose.  See United States v. Londono-Quintero, 289 F.3d 147, 151-52 (1st Cir. 2002).

The BIA, and various courts of appeals, also have imported versions of the categorical approach into removal jurisprudence.  See Emile, 244 F.3d at 187 & nn.3-4 (collecting cases).  There is, however, no universally accepted definition of what constitutes a "modified categorical approach" for immigration-law purposes (in this case, for example, the BIA said that it utilized a "modified categorical approach" but did not attempt to define the term).  The Ninth Circuit uses that locution to refer to the second step of the Taylor analysis and the locution "categorical approach" to refer to the first step.  See Li v. Ashcroft, 389 F.3d 892, 895-96 (9th Cir. 2004).  Other courts, and the BIA, have referred to the two-step Taylor rubric by the unitary term "categorical approach."  See, e.g., Singh v. Ashcroft, 383 F.3d 144, 152-53 (3d Cir. 2004); Dickson v. Ashcroft, 346 F.3d 44, 48-49 (2d Cir. 2003); In re Vargas-Sarmiento, 23 I&N Dec. 651, 652-54 (BIA 2004); In re Sweetser, 22 I&N Dec. 709, 715 (BIA 1999); Matter of Alcantar, 20 I&N Dec. at 812-13.  A modified categorical approach would, under these authorities, be some variant of the Taylor two-step.

This is not merely an exercise in semantics. The Ninth Circuit's praxis means that it in effect uses an unmodified categorical approach in immigration cases. See, e.g., Li, 389 F.3d at 895-97 & n.7 (holding that a conviction resulting from a guilty verdict subsumes an aggravated felony for immigration purposes only when the record of conviction establishes that the jury was required to find all the elements of an offense enumerated in 8 U.S.C. § 1101(a)(43)); Chang v. INS, 307 F.3d 1185, 1190-91 (9th Cir. 2002) (holding that, when a conviction results from a guilty plea, the putative predicate crime constitutes an aggravated felony only if the record of conviction establishes that the defendant necessarily pleaded guilty to each and every element of an offense enumerated in 8 U.S.C. § 1101(a)(43)). In that court's view, this praxis comports with the statutory requirement that the alien have been convicted of an aggravated felony. See Chang, 307 F.3d at 1190-91 (construing 8 U.S.C. § 1227(a)(2)(A)(iii)). In a non-guilty-plea case implicating the INA's fraud provision, this line of reasoning requires the government to show that the jury necessarily found that the putative predicate offense (i) involved fraud or deceit and (ii) resulted in a loss of more than $10,000. See Li, 389 F.3d at 896-97.

The petitioner invites us to follow the Ninth Circuit's lead and extend the categorical approach, without modification, to our review of removal orders grounded upon aggravated felony

convictions. Because the jury in the conspiracy case did not necessarily find either that the conspiracy involved fraud or deceit or that the crime resulted in a loss exceeding $10,000, his thesis runs, the BIA's characterization of that crime as an aggravated felony is insupportable.

With respect, we think that the Ninth Circuit has drained much of the specialized meaning from the term "modified categorical approach." Because the relevant authorities strongly suggest that some variant of the categorical approach should govern the determination of whether an offense qualifies as an aggravated felony for immigration purposes, see, e.g., Aguiar, 438 F.3d at 88-89, we decline the invitation to transplant the categorical approach root and branch — without any modification whatever — into the civil removal context. In our view, the term "modified categorical approach" must denominate an adaptation of the Taylor methodology specially tailored to fit the immigration context.

Our reasons are manifold. First, the rationale of Shepard and Taylor is informed by constitutional concerns. See Shepard, 544 U.S. at 24; Taylor, 495 U.S. at 601. Those concerns, which emanate from the Sixth Amendment, are crucial in the criminal context but entirely irrelevant in the removal context (which is civil in nature). See INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984) (stating that "various protections that apply in the context of a criminal trial do not apply in a deportation proceeding" due

to the civil nature of deportation); United States v. L.O. Ward, 448 U.S. 242, 248 (1980) (holding that Sixth Amendment protections are available only in criminal proceedings).  Consequently, the Taylor-Shepard rationale cannot be applied woodenly to removal cases.

Second, although the BIA has cited Taylor in some aggravated felony cases, see, e.g., Matter of Alcantar, 20 I&N Dec. at 812, it traditionally has favored a less restrictive form of the categorical approach in cases other than those controlled by Ninth Circuit precedent, see, e.g., Vargas-Sarmiento, 23 I&N Dec. at 654-55; In re Pichardo-Sufren, 21 I&N Dec. 330, 333-36 (BIA 1996).  And in at least one of our prior cases, we have indicated that the BIA should employ some modification of the categorical approach.  See Montero-Ubri v. INS, 229 F.3d 319, 321 (1st Cir. 2000) (upholding, in a crime of moral turpitude case, the BIA's partial reliance on conduct described in a charged but continued count from the criminal proceeding).

Last — but far from least — using an unmodified categorical approach impermissibly elevates the government's burden in civil removal proceedings.  The INA requires clear and convincing evidence of removability, see 8 U.S.C. § 1229a(c)(3)(A), but the unmodified categorical approach in effect requires proof beyond a reasonable doubt.

-15-

Given these differentiating factors, we, like the Third Circuit, see Singh, 383 F.3d at 159-63, see no warrant for applying an exact replica of the Taylor-Shepard categorical approach in the immigration context. Instead, we hold that, in removal proceedings, a modified categorical approach should prevail.

Under that approach, the government is not required to show that the jury in the prior criminal case necessarily found (or, where a guilty plea has taken place, that the defendant necessarily admitted) every element of an offense enumerated in 8 U.S.C. § 1101(a)(43). Rather, the government bears the burden of proving, by clear and convincing evidence derived solely from the record of the prior proceeding, that (i) the alien was convicted of a crime and (ii) that crime involved every element of one of the enumerated offenses. Cf. Pichardo-Sufren, 21 I&N Dec. at 333 (holding that a conviction supports a finding of removability only where the record of conviction "contains clear, unequivocal, and convincing proof" that the predicate crime involved every element of the removable offense).

It follows from this holding that when a statutory violation necessarily involves all the elements of an enumerated offense, proof of the fact of conviction suffices to discharge the government's burden. Cf. Taylor, 495 U.S. at 602 (adopting this approach with respect to the determination of whether a prior conviction qualifies as a predicate offense under the ACCA). When,

-16-

however, the statute on which the prior conviction rests sweeps more broadly, the government, in accordance with the animating principle of Taylor, must demonstrate, by reference only to facts that can be mined from the record of conviction, that the putative predicate offense constitutes a crime designated as an aggravated felony in the INA. See Pichardo-Sufren, 21 I&N Dec. at 335-36.

We emphasize that the difference between this approach and that of the Ninth Circuit is only a matter of degree. We agree with the Ninth Circuit that the distinction between conviction for and commission of an aggravated felony is an important one; because the BIA may not adjudicate guilt or mete out criminal punishment, it must base removal orders on convictions, not on conduct alone. See Lopez-Mendoza, 468 U.S. at 1038. We also agree with the Ninth Circuit that, consistent with the core holding of Taylor, a predicate conviction qualifies as an aggravated felony conviction only if it subsumed each and every element of an offense enumerated in section 1101(a)(43). We part company, however, in rejecting the implicit proposition that the INA's use of the word "convicted" in 8 U.S.C. § 1227(a)(2)(A)(iii) elevates the government's burden in aggravated felony cases from clear and convincing evidence to proof beyond a reasonable doubt (that is, proof that facts were necessarily found by a criminal jury or admitted by the alien qua criminal defendant).

The approach we endorse today faithfully implements a legislative choice. Congress ordained the use of the clear and convincing evidence standard in removal proceedings, see 8 U.S.C. § 1229a(c)(3)(A), and nothing in either the statutory language or the legislative history suggests that Congress intended to create a more rigorous standard for aggravated felony cases. Courts are not at liberty to second-guess such congressional choices. See United States v. Pho, 433 F.3d 53, 62 (1st Cir. 2006) (stating that "in the absence of constitutional infirmity, federal courts are bound by Congress's policy judgments").

Practical considerations push in the same direction. Congress clearly intended to facilitate an efficient removal process, especially in aggravated felony cases, and not to impede unduly the Executive Branch's exercise of the civil removal power. See, e.g., 8 U.S.C. § 1228 (establishing expedited removal procedures in aggravated felony cases); see generally Lopez-Mendoza, 468 U.S. at 1039 (stating that the purpose of deportation proceedings is "to provide a streamlined determination of eligibility to remain in this country").

That ends this aspect of the matter. In light of the considerations limned above, we conclude that the Ninth Circuit's grudging construction of section 1227(a)(2)(A)(iii) contravenes Congress's clear intent. We also conclude that the Ninth Circuit's approach gives insufficient weight to the BIA's stated preference

-18-

for using a modified categorical approach by giving lip service (and no more) to the word "modified" in the locution "modified categorical approach." Consequently, we reject that construction and approach, and read the statute to authorize a truly modified categorical approach of the type described above.

A removal order that is grounded upon a conviction under a generic conspiracy statute — such as the one here — presents a further wrinkle. In that situation, the government is not required to demonstrate that the conspiracy itself involved every element of a substantive offense enumerated in 8 U.S.C. § 1101(a)(43). See Kamagate v. Ashcroft, 385 F.3d 144, 152-53 (2d Cir. 2004). Rather, the government must demonstrate, by clear and convincing evidence mined from the record of conviction, that "the substantive crime that was the conspiratorial objective . . . qualifies as an aggravated felony." Id. at 153.

In this instance, the petitioner concedes that he was convicted for conspiracy in violation of 18 U.S.C. § 371 (a generic conspiracy statute). The government claims that this constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(U) because the object of the conspiracy qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). The decisive question, then, is whether the record of conviction establishes that the conspiratorial objective encompassed an offense involving both

-19-

fraud or deceit and a loss to the victim or victims in excess of $10,000.  See id.

There is, however, an antecedent question.  Before answering the inquiry limned above, we must first determine what evidence may appropriately be considered part of the record of conviction (and, thus, may be used by the BIA in fulfilling its factfinding function).  We turn next to this antecedent inquiry.

2.  **The Record of Conviction**.  Consistent with its concern for ensuring certainty and reliability, the Shepard Court refused to allow a sentencing judge evaluating the particulars of a putative predicate offense to consult materials other than "conclusive records made or used in adjudicating guilt."  544 U.S. at 21.  The INA, however, offers a slightly different coign of vantage.  It explicitly states that, in proceedings before the BIA, any of a litany of "documents or records shall constitute proof of a criminal conviction."  8 U.S.C. § 1229a(c)(3)(B).  These include:

> (i) An official record of judgment and conviction.
> (ii) An official record of plea, verdict, and sentence.
> . . . .
> (v) An abstract of a record of conviction prepared by the court in which the conviction was entered . . . that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.
> (vi) Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.

-20-

<u>Id.</u>[4]   An implementing regulation contains a catch-all provision stating that "[a]ny other evidence that reasonably indicates the existence of a criminal conviction may be admissible as evidence thereof."   8 C.F.R. § 1003.41(d).

The petitioner asserts that the BIA erred in relying in part on his testimony in the removal hearing to ascertain the proper classification of the conspiracy offense.   The government counters that the regulation's catch-all provision extends to the petitioner's testimony and that, therefore, the BIA committed no error in considering it as evidence of the facts underlying the putative predicate crime.   In an attempt to bolster this argument, the government points out that, in removal cases premised on prior criminal convictions, the BIA permits reliance on "[any] documents admissible under federal regulations."   <u>Pichardo-Sufren</u>, 21 I&N Dec. at 334.

The government's argument is untenable.   It seems obvious to us that the record of conviction cannot encompass after-the-fact statements made in a separate and subsequent proceeding.   At any rate, the regulation's catch-all provision authorizes the admission of evidence for the sole purpose of proving "the <u>existence</u> of a

---

[4]The Second Circuit has construed this provision as a definition of the term "record of conviction." <u>Dickson</u>, 346 F.3d at 53.  Given that the statute speaks more broadly of records that constitute "proof of a criminal conviction" and uses the phrase "record of conviction" to describe a subset of those records, we decline to adopt that construction.

criminal conviction," 8 C.F.R. § 1003.41(d) (emphasis supplied); it does not authorize the admission of evidence for the purpose of proving the facts underlying the offense of conviction. Hence, the BIA's use of the petitioner's testimony as evidence that the conspiracy qualified as an aggravated felony constituted error.[5] See Dickson, 346 F.3d at 53 (holding that the BIA erred in construing extra-judicial statements as evidence of the facts underlying a putative predicate offense).

If more were needed — and we doubt that it is — the holding in Pichardo-Sufren clearly contradicts the BIA's asserted right to rely upon the petitioner's testimony. That case involved a removal proceeding based on an alien's conviction under a state statute criminalizing the possession of several types of weapons, including firearms. 21 I&N Dec. at 331. The central issue was whether this predicate offense constituted a firearms offense and, thus, rendered the alien removable under 8 U.S.C. § 1227(a)(2)(C). The record of conviction contained only a "Certificate of Disposition" from the state court, which indicated that the alien had been convicted of possession of an unspecified weapon. Id. at

_____

[5]We deal only with the BIA's consultation of the petitioner's testimony at the removal hearing. We do not question the BIA's right to rely upon an alien's stipulation that a predicate offense constitutes an aggravated felony or upon the alien's concession of removability premised on a conviction for an aggravated felony. See Pichardo-Sufren, 21 I&N Dec. at 333 (emphasizing this distinction). The case at hand does not present either of the latter two situations.

-22-

344.  Relying on the alien's testimony at the removal hearing, the IJ characterized the crime as a firearms offense.  Id.  The BIA reversed, holding that the INA "limits [the] scope of inquiry to the record of conviction."  Id. at 335.  Since the alien's testimony at the removal hearing was not part of the record of conviction, it was not an appropriate basis for the IJ's decision. Id. at 335-36.

The petitioner also assails the BIA's consultation of the PSI Report as a means of determining the underlying facts.  The government asserts that the PSI Report is part of the record of conviction by virtue of the fact that it is a "record prepared . . . under the direction of . . . the court in which the conviction was entered that indicates the existence of a conviction."  8 U.S.C. § 1229a(c)(3)(B)(vi).[6]

We reject the government's argument: the BIA's consultation of the PSI Report as proof of the specific facts underlying the petitioner's prior conviction was improper.  See Dickson, 346 F.3d at 53 (concluding that the BIA may not consider the narrative statement in a PSI Report as evidence of the facts underlying a putative predicate offense); Hernandez-Martinez v. Ashcroft, 343 F.3d 1075, 1076 (9th Cir. 2003) (holding that a PSI

---

[6]The government also asserts that the PSI Report is part of the record of conviction by virtue of 8 C.F.R. § 1003.41(d). Because the PSI Report was used by the BIA to do more than confirm the existence of the conviction, that argument is bootless.

Report is insufficient to prove that an alien's conviction embodied every element of an enumerated offense (citing United States v. Corona-Sanchez, 291 F.3d 1201, 1212 (9th Cir. 2002) (en banc))). Other than for its possible use to prove the existence of a conviction, see 8 U.S.C. § 1229a(c)(3)(B)(vi), such a report simply is not a part of the formal record of conviction. Cf. Shepard, 544 U.S. at 20-23 (precluding the use of a police report to prove the underlying facts of the putative predicate offense).

This brings us to the two remaining documents on which the BIA relied in the instant case — the indictment and the final judgment (including the restitution order) referable to the conspiracy conviction. The BIA's reliance on those documents cannot be faulted: both documents comprise "conclusive [judicial] records made or used in adjudicating guilt," id. at 21. Even the Ninth Circuit, which adheres to a narrow version of the categorical approach in the aggravated felony context, permits the BIA to reference the indictment and judgment from the antecedent criminal case. See Hernandez-Martinez, 343 F.3d at 1076. These documents are part of the record of conviction and, accordingly, we hold that the BIA's consultation of them in aggravated felony cases is proper.[7]

---

[7]The petitioner takes issue with the BIA's consideration of the indictment on different grounds, arguing that because the indictment did not charge him with violating 18 U.S.C. § 371, his conviction must have been based on a superceding indictment not contained in the record of the removal proceeding. This argument

-24-

With this procedural platform in place, we now proceed to consider whether the materials properly before the BIA — the statutes, the indictment, and the final judgment — compelled the two-pronged finding that the conspiratorial objective involved both fraud or deceit and a loss to victim(s) of more than \$10,000. If so, the BIA's erroneous reliance on other materials had no effect on the outcome of the proceeding and was, therefore, harmless. See Harutyunyan v. Gonzales, 421 F.3d 64, 70 (1st Cir. 2005) (defining a harmless error, for immigration purposes, as one "that would [not] have made a dispositive difference in the outcome of the proceeding").

**3. <u>Fraud or Deceit</u>.** The initial step in this inquiry is to determine whether the offenses charged as the conspiratorial objective — namely, violations of 18 U.S.C. §§ 1344 and 513(a) — qualify as offenses that involve fraud or deceit within the purview of 8 U.S.C. § 1101(a)(43)(M)(i). We agree with the Third Circuit that the plain language of <u>the</u> <u>latter</u> section encompasses every offense "that includes fraud or deceit as a necessary component or element" and does not require that the predicate offense "be coextensive with the crime of fraud." <u>Valansi</u> v. <u>Ashcroft</u>, 278

---

is frivolous. Count 1 of the indictment contained in the record of the removal proceeding specifically references 18 U.S.C. § 371 and charges that the petitioner "willfully . . . and knowingly . . . combined, conspired, [and] confederated" to commit bank fraud. To cinch matters, the docket in the criminal case contains no entry for a superceding indictment.

F.3d 203, 210 (3d Cir. 2002). An offense with a scienter element of either intent to defraud or intent to deceive categorically qualifies as an offense involving fraud or deceit. See Ferreira v. Ashcroft, 390 F.3d 1091, 1096-97 (9th Cir. 2004) (holding that a state-law offense with an intent to defraud or deceive element categorically qualified as an offense involving fraud or deceit); Valansi, 278 F.3d at 210 (indicating that a crime of embezzlement with intent to defraud would "no doubt" qualify as an offense involving fraud or deceit); Sui v. INS, 250 F.3d 105, 118 n.12 (2d Cir. 2001) (holding that an alien's guilty plea to an offense requiring intent to deceive established the element of fraud or deceit).

Both crimes charged as comprising the conspiratorial objective are offenses involving fraud or deceit. Section 1344 is a bank fraud statute; it criminalizes the knowing execution or attempted execution of a scheme or artifice either "to defraud a financial institution" or "to obtain any of [its] funds . . . or other property . . . by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344 (emphasis supplied). The intent element under this statute translates into "an intent to deceive the bank in order to obtain from it money or other property." United States v. Kenrick, 221 F.3d 19, 29 (1st Cir. 2000) (en banc). In a similar vein, section 513(a) provides that "[w]hoever makes, utters, or possesses a counterfeited . . .

-26-

[or] forged security of a State or . . . an organization, with intent to deceive another person, organization, or government" commits an offense. 18 U.S.C. § 513(a). No more is exigible to establish that a violation of either of these statutes is an offense involving fraud or deceit.

In an effort to blunt the compelling force of this plain statutory language, the petitioner asseverates that his acquittal on counts 2 and 3 — which charged violations of 18 U.S.C. §§ 1344 and 513(a) in relation to the transactions involving the Chase account — entails a jury finding that his participation in the conspiracy was not accompanied by any intent to defraud or deceive. On at least three levels, that reasoning is anfractuous.

First, the bare fact that the jury acquitted the petitioner on those two counts is not tantamount to a finding that the petitioner lacked an intent to defraud or deceive: after all, as to the Chase transactions, the jury might well have found the prosecution's evidence deficient as to some element other than scienter. Second, counts 2 and 3 alleged specific acts of fraud with regard to transactions involving the Chase account. They had nothing to do with the transactions involving the Dime Savings account and, therefore, the acquittals could not in any way have been exculpatory as to the latter transactions. Third, the petitioner mischaracterizes the nature of our inquiry in cases, such as this one, in which a conspiracy is alleged to be an

-27-

aggravated felony. What matters is whether the government has satisfied its burden of showing that the <u>offense</u> <u>charged</u> <u>as</u> <u>the</u> <u>conspiratorial</u> <u>objective</u> involved all the elements of an enumerated substantive offense. We already have determined that violations of 18 U.S.C. §§ 1344 and 513(a) — the conspiratorial objectives charged in count 1 — qualify as crimes involving fraud or deceit.[8]

For these reasons, nothing that the jury might have concluded with respect to counts 2 and 3 can serve to undermine the determination that the conspiracy is an aggravated felony under 8 U.S.C. § 1101(a)(43)(U).

**4. Loss Exceeding $10,000.** The final phase of our aggravated felony inquiry requires us to determine whether the offenses charged as the conspiratorial objective involved a loss to victim(s) of more than $10,000. The petitioner correctly points out that because neither section 1344 nor section 513(a) contains a loss element, his conviction does not automatically satisfy the loss requirement of 8 U.S.C. § 1101(a)(43)(M)(i). The question,

---

[8]At the expense of carting coal to Newcastle, we add that the record of the petitioner's conviction buttresses the conclusion that the offenses charged as the conspiratorial objective involved fraud or deceit. Tracking the statutory language, the operative count (count 1) charged the petitioner with participating in a conspiracy "to defraud a financial institution and to obtain . . . moneys, funds, credits, and other property . . . by means of false and fraudulent pretenses." Count 1 further charged that the petitioner acted "with intent to deceive" and described his active participation in six fraudulent transactions. The jury found the petitioner guilty on this count, and the final judgment referable to the petitioner's conviction describes the offense as "[c]onspiracy to commit bank fraud."

then, is whether, at the second step of the modified categorical approach, the record of conviction supports the conclusion that the conspiratorial objective involved a loss of more than $10,000.

In this case, the record of conviction demands such a conclusion. The count of conviction described the petitioner's participation in six fraudulent transactions stemming from two counterfeit checks drawn in the aggregate amount of $54,439.06. As part of the final judgment, the district court adjudged the petitioner responsible for $34,200 in victim loss and ordered restitution in that amount. In view of our conclusion that the restitution order comprises part of the record of conviction, see supra Part II(A)(2), we can say with confidence that the offenses charged as the conspiratorial objective were offenses in which the loss exceeded $10,000.

In an endeavor to parry this thrust, the petitioner advances a pair of spavined arguments. First, he suggests that the major portion of the restitution amount (the $25,200 loss suffered by First Vermont Bank) should not be counted toward the loss threshold because that amount was neither separately charged in the indictment nor found by the jury beyond a reasonable doubt. The premise of this argument — that the categorical approach should be transplanted root and branch from the criminal context into the civil removal context — is incorrect. See supra Part II(A)(1). In all events, the loss suffered by First Vermont Bank was charged in

count 1 of the indictment; although no direct reference was made to that institution, it was the drawee of the counterfeit check described in the conspiracy count as having been deposited in the Dime Savings account. To cinch matters, the count charged the transactions involving that check as overt acts undertaken in furtherance of the conspiracy.

The petitioner's second argument is equally unpersuasive. He takes issue with the BIA's reliance on the restitution order, contending that the amount of restitution and the amount of victim loss are not necessarily synonymous. In support of this proposition, he cites Munroe v. Ashcroft, 353 F.3d 225, 227 (3d Cir. 2003), which, he says, holds that the BIA may not rely on a restitution order as evidence of the amount of loss.

This is a gross mischaracterization of the decision in Munroe. That case had its genesis in a removal proceeding following an alien's guilty plea to state bank fraud charges. Id. at 226. The state court initially ordered Munroe to pay $11,522 in restitution. Id. After the BIA ordered Munroe removed, however, he successfully petitioned the state court to reduce the restitution obligation to $9,999. Id. Munroe then filed an application for a writ of habeas corpus in a federal district court, positing that the record of conviction no longer supported the determination that his prior offense involved a loss of more than $10,000. Id. at 227.

The Third Circuit rejected that ploy. In language underscoring the unique facts of the case, the court wrote:

> The amount of restitution ordered as a result of a conviction may be helpful to a court's inquiry into the amount of loss to the victim . . . . But when the amount of restitution ordered is not based on a finding as to the amount of the loss but is instead intended solely to affect the defendant's immigration status, the amount of restitution is not controlling.

Id. Seen in this light, Munroe stands for the entirely unremarkable proposition that when a restitution award has been artificially manipulated for the sole purpose of influencing an alien's immigration status, that award is not controlling with respect to the amount of loss. See Ferreira, 390 F.3d at 1099 (distinguishing Munroe on this basis).[9]

Our dissenting brother attacks our reliance on the restitution order on a somewhat different ground. He argues that

---

[9]The Ninth Circuit's decision in Chang, 307 F.3d 1185, which dealt with the obverse of the situation in Munroe, is likewise distinguishable. In that case, as in Munroe, the court was confronted with the rare circumstance in which the restitution order directly contradicted the evidence as to the amount of loss. See Ferreira, 390 F.3d at 1099 (distinguishing Chang on this basis).

In Chang, the alien pleaded guilty to a single count of bank fraud involving a check drawn in the amount of $605.30, and the plea agreement stipulated that this was the total amount of victim loss. 307 F.3d at 1187. The sentencing court entered a restitution order of $32,628.67. Id. at 1188. On review of a subsequent removal order, the Ninth Circuit held that the BIA erred in concluding, based on the restitution order, that Chang's predicate offense involved a loss in excess of $10,000. Id. at 1190. Given these idiosyncratic facts, Chang has no bearing on the resolution of this appeal.

the restitution order was "based entirely" upon the PSI Report's calculation of the amount of victim loss. Post at 46 (Hug, J., dissenting). Building on this porous foundation, he then asserts that because the PSI Report is not part of the record of conviction, the restitution order is an "unreliable" basis for concluding that the amount of victim loss exceeded $10,000. Id. at 47.

This attack is easily repulsed. In the first place, its premise — that the restitution order was "based entirely" on the PSI Report's calculation of victim loss — is incorrect. The PSI Report concluded that the conspiracy caused "an attempted loss" of $54,439.06. The judge found an actual loss in a substantially smaller sum. More importantly, the district court made an explicit finding of the amount of loss as part of its final judgment. Given that the record of conviction includes the final judgment, we fail to see why we should treat this finding as "unreliable" with respect to the particulars of the petitioner's predicate offense.[10]

To recapitulate, the facts properly gleaned from the record of conviction — which consists of the statutes, the indictment, and the final judgment — compelled the conclusion that

---

[10]It is of no consequence that this finding may, in part, have reflected information contained in the PSI Report. After all, findings incorporated in the final judgment routinely are predicated on evidence outside the formal record of conviction. It is, therefore, unsurprising that the dissent has failed to cite a single case suggesting that the BIA may not rely on such findings in the course of an aggravated felony inquiry.

the offenses charged as the conspiratorial objective qualify as crimes involving fraud or deceit in which the loss to the victim(s) exceeded $10,000. Accordingly, the conspiracy conviction qualifies as a conviction for an aggravated felony under 8 U.S.C. § 1101(a)(43)(U) and renders the petitioner removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

## B. **Withholding of Removal**.

We turn now to the petitioner's assertion that the BIA erred in denying his claim for withholding of removal. The petitioner's challenge is fact-based, and the government's first line of defense is a suggestion that we lack jurisdiction over this component of the petition. That suggestion is well-founded.

The REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (codified at 8 U.S.C. § 1252(a)(2)(D)), reconfigured the boundaries of federal-court jurisdiction over BIA removal orders. See Mehili v. Gonzales, 433 F.3d 86, 92 (1st Cir. 2005). Prior to 2005, the INA precluded judicial review of any aspect of a final order of removal premised on an aggravated felony conviction. See Aguiar, 438 F.3d at 87-88. Although the INA continues to provide that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of [an aggravated felony conviction]," 8 U.S.C. § 1252(a)(2)(C), the REAL ID Act softens this provision by allowing "review of constitutional claims or questions of law

-33-

raised upon a petition for review filed with an appropriate court of appeals," id. § 1252(a)(2)(D).

Under this neoteric formulation, federal courts of appeals have jurisdiction to review colorable claims of constitutional or legal error in the BIA's determination that an alien's putative predicate offense qualifies as an aggravated felony. See Aguiar, 438 F.3d at 88. Thus, our jurisdiction to hear and determine the petitioner's principal assignment of error, see supra Part II(A), is unassailable. Beyond that point, however, judicial review of the factual findings underlying a removal order based on an aggravated felony conviction remains foreclosed. See Silva v. Gonzales, 455 F.3d 26, 29 (1st Cir. 2006). This proscription extends to review of the BIA's factual findings as to credibility, evidentiary weight, and satisfaction of a correctly framed burden of proof. See Mehili, 433 F.3d at 93-94.

Those principles are determinative here. The petitioner does not raise a colorable claim of constitutional or legal error with respect to the BIA's disposition of his withholding of removal claim. His argument, though vigorously advanced, boils down to the commonplace assertion that the IJ (and, thus, the BIA) misconstrued the evidence and, in the bargain, relied too heavily on a vague and general report of changed country conditions in Sierra Leone. This is a classic claim of factual error. See Elysee v. Gonzales, 437 F.3d 221, 223-24 (1st Cir. 2006); Mehili, 433 F.3d at 93-94.

-34-

Accordingly, we lack jurisdiction to review this portion of the instant petition.

## C. **Other Discretionary Relief**.

The petitioner's final assignment of error is addressed to the BIA's holding that he failed to make a prima facie showing of eligibility for either a waiver of inadmissibility or an adjustment of status. We would lack jurisdiction over a challenge to the BIA's discretion-driven denial of this kind of relief. See 8 U.S.C. § 1252(a)(2)(B)(i); see also Singh v. Gonzales, 413 F.3d 156, 160 n.4 (1st Cir. 2005). Here, however, the petitioner's claim, as phrased, hinges on a pure question of law. Consequently, we have jurisdiction to hear and entertain it. See 8 U.S.C. § 1252(a)(2)(D); see also Singh v. Gonzales, 413 F.3d at 160 n.4.

The relevant facts are as follows. The petitioner first asserted his eligibility for a waiver of inadmissibility and an adjustment of status during his second appeal to the BIA. In a brief filed in conjunction with that appeal, he wrote that his "wife is in the process of becoming a US citizen" and noted that she had "filed an I-130 petition" for his benefit. He speculated that, as a result, he "may be" eligible for an adjustment of status under 8 U.S.C. § 1255(a).

The petitioner argues that this meager submission constituted a prima facie showing of eligibility for a waiver of

inadmissibility and a concomitant adjustment of status. The BIA thought not. So do we.

The threshold question is how to characterize the petitioner's proffer. The parties refer to it variously as a motion to reopen and a motion to remand, but nothing turns on this difference in nomenclature. After all, the regulations provide that a motion to reopen filed during the pendency of an appeal to the BIA "may be deemed a motion to remand for further proceedings" and "may be consolidated with, and considered by the [BIA] in connection with, the appeal." 8 C.F.R. § 1003.2(c)(4). Accordingly, we treat the proffer, for ease in reference, as a motion to reopen.

A waiver of inadmissibility is a matter of discretion. See 8 U.S.C. § 1182(h). Such relief may be awarded on a showing that "the alien's denial of admission would result in extreme hardship to [a] United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." Id. § 1182(h)(1)(B). Adjustment of status is also a matter of discretion. See id. § 1255(a). Upon application, an alien may be "lawfully admitted for permanent residence," as long as "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence . . . and . . . an immigrant visa is immediately available to him at the time his application is filed." Id.

There is a further stipulation — and it has decretory significance here. The regulations provide that "[a] motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2(c)(1). The petitioner's perfunctory submission to the BIA falls far short of satisfying this requirement.

The tale is quickly told. The petitioner did not submit an application for relief or any supporting documentation (other than a copy of the visa petition filed by his wife on his behalf). Moreover, he made no allegation that he was eligible to receive a visa, that he was admissible to the United States for permanent residence, that a visa was immediately available to him, or that his removal would result in extreme hardship to his wife. In light of these omissions, the BIA did not err in ruling that the petitioner failed to make a prima facie showing of eligibility for either a waiver of inadmissibility or an adjustment of status. See generally 8 U.S.C. §§ 1182(h)(1)(B), 1255(a).

Even if the petitioner had properly asserted these claims before the BIA — which he did not — he could not demonstrate eligibility for the requested relief. An adjustment of status may be granted only where an immigrant visa is immediately available to the alien "at the time his application [for adjustment] is filed." 8 U.S.C. § 1255(a). The BIA found — and the petitioner's counsel

-37-

conceded at oral argument — that no visa was available to the petitioner at the time of his submission to the BIA. Thus, the petitioner was statutorily ineligible for that form of relief. See id.

Notwithstanding these gaping holes in his submission, the petitioner insists that the BIA's decision in Matter of Velarde-Pacheco, 23 I&N Dec. 253 (BIA 2002), dictates a contrary result. We do not agree.

The INA grants special rights and priorities to an alien who marries a United States citizen or lawful permanent resident. See, e.g., 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a)(2), 1182(h)(1)(B). However, if the marriage takes place during the pendency of "administrative or judicial proceedings . . . regarding the alien's right to be admitted or remain in the United States," id. § 1255(e)(2), the alien may receive an immediate adjustment of status based on the spousal relationship only if he demonstrates, by clear and convincing evidence, that the marriage was bona fide, see id. § 1255(e)(3). The BIA considers the approval of the spouse's visa petition on the alien's behalf "primary evidence of eligibility for the bona fide marriage exemption." 8 C.F.R. § 1245.1(c)(9)(v).

Prior to Velarde-Pacheco, the BIA had ruled that, in intervening marriage cases, a motion to reopen grounded upon the citizen-spouse's visa petition could be granted only if the petition already had been approved. See Matter of Arthur, 20 I&N

Dec. 475, 477 (BIA 1992). To mitigate the sometimes harsh effect of this rule, the BIA reversed course in Velarde-Pacheco and held that, in such cases, a properly filed motion to reopen based upon the citizen-spouse's pending but unadjudicated visa petition may be granted as a matter of discretion. 23 I&N Dec. at 256. The BIA added, however, that this form of relief is not automatic; the decision to grant or deny it remains discretionary, and such relief continues to be unavailable to an alien whose motion to reopen is barred on "any . . . procedural grounds." Id. Those grounds include the failure to make a prima facie showing of eligibility for relief, see id. at 256-57, and, concomitantly, statutory ineligibility for an adjustment of status, see Bhiski v. Ashcroft, 373 F.3d 363, 370-72 & n.6 (3d Cir. 2004).

As discussed above, the petitioner failed properly to assert a claim for relief. He also was statutorily ineligible for an adjustment of status. Consequently, this case — as the BIA concluded — falls outside Velarde-Pacheco's precedential orbit.[11]

---

[11]There is another looming problem. The Velarde-Pacheco rule was intended to provide an alien who has married a citizen during the pendency of immigration proceedings with an opportunity to establish the bona fides of that marriage. See Patel v. Ashcroft, 375 F.3d 693, 697 n.3 (8th Cir. 2004). The petitioner has not explained how — if at all — Velarde-Pacheco bears on cases, such as this one, which involve an antecedent marriage and an intervening naturalization.

## III. CONCLUSION

We summarize succinctly. Because the offenses charged as the objective of the conspiracy for which the petitioner was convicted were offenses involving fraud or deceit in which the loss to victims exceeded $10,000, the petitioner's conspiracy conviction qualifies as a conviction for an aggravated felony under 8 U.S.C. § 1101(a)(43)(U). The fact that the removal order is predicated on a conviction for an aggravated felony precludes us from exercising jurisdiction over the petitioner's claim of factual error in connection with the denial of his cross-application for withholding of removal. Finally, because the petitioner failed to make a prima facie showing of eligibility for either a waiver of inadmissibility or an adjustment of status, the BIA did not err in denying his barebones motion to reopen the removal proceedings.

We need go no further. For the reasons elucidated above, we deny the petition for review in part and dismiss it in part for want of jurisdiction.

**So Ordered**.


**— Dissenting Opinion Follows —**

**HUG, <u>Senior Circuit Judge</u> (Dissenting**). I respectfully dissent.

Conteh, who is lawfully in the United States, having been granted asylum, was ordered to be removed from the United States on the ground that he had been convicted of an aggravated felony. I dissent for the reason that there was insufficient evidence to prove that Conteh had been convicted of an aggravated felony.

The INS[12] may remove any alien <u>convicted</u> of an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added). The INA defines an "aggravated felony" to include "an offense that . . . involves fraud or deceit in which the loss to the victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(I). In addition, "any attempt or conspiracy to commit an offense described [in section 1101(a)(43)]" also is an aggravated felony. 8 U.S.C. § 1101(a)(43)(U).

Conteh was convicted of violating 18 U.S.C. § 371, which provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

---

[12] To be consistent with the majority opinion I will use INS rather than the current title of the organization, DHS.

-41-

The judgment in the instant case clearly shows that Conteh was convicted of Count One of the indictment, which alleged conspiracy to: (1) defraud a financial institution in violation of 18 U.S.C. § 1344; and (2) make and possess counterfeit securities in order to deceive another person, organization, and government, in violation of 18 U.S.C. § 513(a). Since the statutes that Conteh conspired to violate do not require the fraud to be in excess of $10,000, the fact that Conteh conspired to violate these fraud-related statutes is not sufficient by itself to make Conteh's conviction a conviction for an aggravated felony.

The United States Supreme Court has developed an approach for determining whether convictions of various predicate offenses meet the requirements for enhancements of federal sentences, in Taylor v. United States, 495 U.S. 575 (1990) and Shepard v. United States, 544 U.S. 13 (2005). I agree with the majority that this approach has been applied in the immigration context generally throughout the United States. In Taylor, the Supreme Court stated that the categorical approach

> generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense. This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements [of the predicate offense].

Id. at 602. The majority views the latter inquiry as part of the categorical approach. It denominates it as the "second step" of

-42-

the categorical approach.  As noted by the majority, the Ninth Circuit views this as a "modification of the categorical approach." Li v. Ashcroft, 389 F.3d 892, 895-96 (9th Cir. 2004).

It seems that the Supreme Court in Shepard clears up this difference in stating: "We recognized an exception to this 'categorical approach' only for a narrow range of cases where a jury . . . was actually required to find all the elements of the generic offense."  544 U.S. 13, 17 (2005) (internal quotation omitted) (emphasis added).  The Ninth Circuit has simply termed this exception as the "modified categorical approach."  It would seem that under the Shepard opinion, what the majority describes as the second step of the categorical approach is not a part of the categorical approach itself, but an exception to it.

Regardless of whether this exception is termed a second step of the categorical approach or a modification of the categorical approach, the essential question is whether the BIA may consider factors other than those prescribed by Taylor to determine whether the predicate crime is one in which the loss to the victim or victims exceeds $10,000.

Shepard also provides guidance on this question.  It reversed a First Circuit Court decision and applied the Taylor approach to a predicate crime that was a conviction as a result of a guilty plea.  The First Circuit had held that it was  appropriate to consider police reports and complaint applications in

determining whether the guilty plea necessarily supported a conviction of the required predicate crime.  The Supreme Court reversed, holding that, "[w]e recognized an exception to this categorical approach only for a narrow range of cases where a jury . . . was actually required to find all of the elements of the generic offense."  Shepard, 544 U.S. at 17 (internal quotations omitted).  In the case before us, the majority, in applying what it denominates as the second step of the categorical approach, correctly concludes, in accordance with Taylor and Shepard, that the BIA's reliance on the petitioner's testimony before the IJ and the Presentence Investigation Report was error.

The majority relies on two other documents to uphold the BIA's decision:  (1) the indictment and (2) the restitution order that was entered by the state court.  Reliance on the indictment is appropriate when that reliance is in accordance with Taylor and Shepard.  However, in this case the indictment does not assure that the jury was actually required to find all the elements of the generic offense.  There is nothing in the indictment itself that requires a loss to the victim or victims in excess of $10,000.  The majority relies upon the alleged overt acts to supply this deficiency.  The indictment, however, states with regard to the overt acts the following:

Overt Acts

4.    In furtherance of the conspiracy and to
      the effect the illegal objects thereof,

-44-

the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.     On or about December 5, 1996, a counterfeit check in the amount of $25,200 was deposited into an account (the "Dime Account") at a branch of Dime Savings Bank in Brooklyn, New York.

b.     In or about December 1996, in Brooklyn, New York, JOHN CONTEH, the defendant, withdrew $22,600 from the Dime Account.

c.     In or about January 1997, in Brooklyn, New York, JOHN CONTEH, the defendant, withdrew $1,000 from the Dime Account.

d.     On or about March 17, 1997, a counterfeit check in the amount of $29,239.06 was deposited in an account (the "Chase Account") at a Manhattan branch of Chase Bank.

e.     On or about March 21, 1997, in Manhattan, IBRAHIMA KOITA, a/k/a "Ebou," and JOHN CONTEH, the defendants, caused $500.00 to be withdrawn from the Chase Account.

f.     On or about March 25, 1997, in Manhattan, IBRAHIMA KOITA, a/k/a "Ebou," and JOHN CONTEH, the defendants, caused $8,500.00 to be withdrawn from the Chase Account.

(Title 18, United States Code, Section 371.)

I have several observations. The mere deposit of a counterfeit check in the amount of $25,200 to the Dime Account of the Dime Savings Bank in Brooklyn does not charge any amount of the loss. Nor does the withdrawal of $22,600 from the Dime Account indicate what, if any, loss was suffered by anyone. Most importantly, item "c" of the overt acts specified a withdrawal of only $1,000 from

-45-

the Dime Account.  Under conspiracy law, the jury need only find that there was one overt act in order to convict.  See United States v. Frankhauser, 80 F.3d 641, 653 (1st Cir. 1996).  The jury could have found that there was only a withdrawal of $1,000 from the Dime Account.  Similarly, in items "d", "e" and "f" the deposit of $29,239.06 to the Chase Bank does not indicate any loss and, in fact, under items "e" and "f" it is pointed out that only $9,000 was withdrawn from that account.  The restitution order provided that the total amount of loss was $9,000 to the Chase Manhattan Bank and $25,200 to the First Vermont Bank and Trust.  These are the exact amounts provided for in the Presentence Investigation Report.  It would be odd indeed to base the required $10,000 loss on a showing of $9,000 and $25,200 in the restitution order that was based entirely upon the Presentence Investigation Report when it was determined by the majority that the Presentence Investigation Report could not be relied upon as a determination of the amount of loss to any victim.[13]

_____

[13]  The Presentence Investigation Report gave the following as its recommendation for a restitution order based entirely on unsupported information from bank officials:

Victim Impact

According to George Matranga, Security Department representative of the Dime Bank, the bank suffered no financial loss as a result of the offense and is not seeking restitution at this time.

Boris Malsev, a Chase Manhattan Bank representative informed that they suffered a financial loss in the amount of $9,000.

Another peculiarity is that the restitution order for $25,200 is to be paid for the loss to First Vermont Bank and Trust. Nothing in the indictment indicates any loss to First Vermont Bank and Trust. The overt acts identify only deposits to and withdrawals from the Dime Savings Bank in Brooklyn, New York. Thus, I conclude that the indictment cannot be relied upon to establish that the conviction of the predicate crime involves a loss to the victim or victims exceeding $10,000.

I also conclude that the restitution order cannot be relied upon to show that the loss to the victim or victims exceeds $10,000. First, it is not an element of the crime that the jury was required to find. It is a sentencing order that is not dependent upon a verdict of the jury, but rather is only a sentencing decision by the judge as to an appropriate sentence. This distinction is most clearly illustrated by the United States Supreme Court's decision in <u>United States</u> v. <u>Watt</u>, 519 U.S. 148 (1997), where the Court held that the defendant's sentence could be based on evidence in a charge of which the defendant had been

Restitution can be forwarded to Chase Manhattan Bank, Post Office Box 20007, Jericho, NY 11753, Attn: Edie Collins, reference number: 741-97.

George Patch, representative of First Vermont Bank & Trust informed that they suffered a financial loss in the amount of $25,200. Restitution can be forwarded to First Vermont Bank & Trust, c/o George Patch, Banknorth Group Security, P. O. Box 2469, West Brattleboro, VT, 05303, reference number 97P019.

-47-

acquitted.  Second, it is an unreliable determination of a conviction because it is entirely based upon the Presentence Investigation Report, which the majority appropriately concludes should not have been considered by the BIA.

In conclusion, I would hold that the Taylor and Shepard approach is the appropriate one for the BIA to follow in making its determination of whether the predicate offense is an aggravated felony.  As the majority states at the beginning of its analysis, "The BIA's determination that a given violation of a state or federal statute constitutes an aggravated felony presents a pure question of law."  Thus, the "clear and convincing evidence" standard is inapplicable here.  Under the categorical approach and the exception to the categorical approach, (whether denominated a second step or a modified categorical approach) it was error for the BIA to conclude that the predicate offense was an aggravated felony.  I would hold that this is the limit of the BIA's consideration.  However, even if we were to extend the possible BIA inquiry as the majority does, I conclude that neither the indictment nor the restitution order provide a basis for concluding that Conteh was convicted of the necessary elements of the predicate offense, and I would grant Conteh's petition.