SHEDD, Circuit Judge,
dissenting:
The categorical approach adopted by the majority is a doctrine created by the judicial branch to address issues of concern to the judicial branch — protection of Sixth Amendment rights and efficient use of judicial resources. Although an agency may choose to adopt some version of this approach, there is no requirement to expand this difficult, almost unworkable, limiting analysis to an agency, especially in the immigration context, and I would not do so.
Instead, employing the familiar analysis prescribed by Chevron, U.SA., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), I would defer to the Attorney General’s position in Matter of Silva-Trevino, 24 I. & N. Dec. 687, 688-90 (A.G. 2008). The Chevron analysis, and the deference it counsels, is particularly applicable in the immigration context. As we have noted, “[i]n considering the Attorney General’s interpretation of the [Immigration and Nationality Act], we are mindful of the fact that ‘the power to expel or include aliens [is] a fundamental sovereign attribute exercised by the Government’s political departments largely immune from judicial control.’”[1] The Supreme Court *487 has reminded lower courts that “it is important to underscore the limited scope of judicial inquiry into immigration legislation,” and that “ ‘over no conceivable subject is the legislative power of Congress more complete than it is over’ the admission of aliens.” Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (quoting Oceanic Navigation Co. v. Stranahan, 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909)).
We summarized the broad scope of this deference in Blanco de Belbruno:
The Attorney General enjoys broad powers with respect to “the administration and enforcement of [the INA] and all other laws relating to the immigration and naturalization of aliens.” 8 U.S.C. § 1103(a)(1) (2000). The INA empowers the Attorney General to “establish such regulations; ... issue such instructions; and perform such other acts as he deems necessary for carrying out his authority” under the immigration laws. 8 U.S.C. § 1103(a)(3) (2000).
Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 279 (4th Cir.2004).
The immigration context provides the executive with the broadest discretion to act, but the majority denies them the slightest discretion to engage in further inquiry in a small number of cases where the categorical approach does not yield a definitive answer. Therefore, I respectfully dissent.
I.
Ricardo Prudencio, at the age of 20, had sex with a 13-year-old girl and infected her with a sexually transmitted disease. Prudencio pled guilty to one count of contributing to the delinquency of a minor, in violation of Virginia Code Annotated § 18.2-371. As a legal permanent resident, Prudencio is subject to removal if he is “convicted of’ a “crime involving moral turpitude.” 8 U.S.C. § 1227(a)(2)(A)(i)(I).
In Matter of Silva-Trevino, the Attorney General, concerned with the “patchwork of different approaches across the nation” courts applied to the moral turpitude provisions, determined that, in certain limited circumstances, immigration judges may consider evidence beyond the record of conviction in determining if an alien was convicted of a “crime involving moral turpitude.” 24 I. & N. Dec. at 688. Using this approach, the Board of Immigration Appeals (BIA) determined that Prudencio was convicted of a crime involving moral turpitude. Specifically, the BIA concluded that Prudencio’s record of conviction was inconclusive as to whether he was convicted of a crime involving moral turpitude, but that the immigration judge’s findings of fact — which Prudencio did not dispute— showed that Prudencio had a sexual encounter with a “child 13 years of age,” and that his conviction was for a crime involving moral turpitude. (J.A. 107).
In contrast, the majority decides that by using the term “convicted,” Congress unambiguously mandated that courts apply the “categorical approach” created by the Supreme Court in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) and Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) for use in enhancing sentences under the Armed Career Criminal Act. The majority further concludes that, as a result, immigration judges are prohibited from looking at evidence beyond the record of conviction to determine if a conviction was for a “crime involving *488 moral turpitude.” In reaching this conclusion, the majority necessarily declines to defer to Silva-Trevino.
I disagree with the majority. Like the Seventh Circuit, I conclude that “when deciding how to classify convictions under criteria that go beyond the criminal charge-such as ... whether the crime is one of ‘moral turpitude,’ the agency has the discretion to consider evidence beyond the charging papers and judgment of conviction.” Ali v. Mukasey, 521 F.3d 737, 743 (7th Cir.2008). Moreover, I question the wisdom of imposing an approach on immigration judges that we have, at times, proven unable to apply in a workable fashion in the Armed Career Criminal Act context where it is required. See, e.g., United States v. Vann, 660 F.3d 771, 787-88 (4th Cir.2011) (Agee, J., concurring).[2] As Justice Alito has noted, “the ‘categorical approach’ to predicate offenses has created numerous splits among the lower federal courts,” and “clarity has been the true inadvertent casualty” of the approach. Chambers v. United, States, 555 U.S. 122, 133, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (Alito, J., concurring).[3]
At bottom, I find it difficult — if not impossible — to accept that Congress intended for persons such as Prudencio to remain in the United States “simply because there might have been no moral turpitude in the commission by other individuals (real or hypothetical) of crimes described by the wording of the same statute under an identical indictment.” Marciano v. INS, 450 F.2d 1022, 1027 (8th Cir.1971) (Eisele, J., dissenting).
II.
In applying Chevron, we first consider whether “Congress has directly spoken to the precise question” at issue. Chevron, 467 U.S. at 842, 104 S.Ct. 2778. If Congress has so spoken, the inquiry ends because courts and agencies “must give effect to the unambiguously expressed intent of Congress.” Id. at 843, 104 S.Ct. 2778. If the statute is silent, however, “agencies [generally] have authority to fill gaps.” Nat’l Cable & Telecomm. Ass’n v. Gulf Power Co., 534 U.S. 327, 339, 122 S.Ct. 782, 151 L.Ed.2d 794 (2002). In cases of statutory silence, we “must defer, under Chevron, to [an agency’s interpretation of its governing statute], so long as that interpretation is permissible in light of the statutory text and reasonable.” Ohio Valley Envtl. Coal. v. Bulen, 429 F.3d 493, 498 (4th Cir.2005) (internal quotation marks omitted) (emphasis added).
The INA provides several moral turpitude provisions, one of which is relevant to our case. Section 1227(a)(2)(A)(i)(I) provides for the removal of an alien “convicted of’ a “crime involving moral turpitude.” In Silva-Trevino, the Attorney General laid out an in-depth approach to applying the moral turpitude provisions of the INA in response to the “patchwork” application of those provisions that the categorical approach had wrought. Silva-Trevino, 24 I. & N. Dec. at 688. As the Attorney General noted, “confusion remains about what, if anything, may follow such an inquiry where categorical analysis does not resolve the question” of whether an alien was convicted of a crime involving moral turpitude. *489 Silva-Trevino, 24 I. & N. Dec. at 694.[4] In an effort to resolve the lack of uniform treatment of the moral turpitude provisions across the federal circuits, the Attorney General set forth the following test:
First, in evaluating whether an alien’s prior offense is one that categorically involves moral turpitude, immigration judges must determine whether there is a “realistic probability, not a theoretical possibility,” that the State or Federal criminal statute pursuant to which the alien was convicted would be applied to reach conduct that does not involve moral turpitude. Cf. Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 [127 S.Ct. 815, 166 L.Ed.2d 683] (2007).
Second, where this categorical analysis does not resolve the moral turpitude inquiry in a particular case, an adjudicator should proceed with a “modified categorical” inquiry. In so doing, immigration judges should first examine whether the alien’s record of conviction — including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea and the plea transcript — evidences a crime that in fact involved moral turpitude. When the record of conviction is inconclusive, judges may, to the extent they deem it necessary and appropriate, consider evidence beyond the formal record of conviction. The goal of this inquiry is to discern the nature of the underlying conviction where a mere examination of the statute itself does not yield the necessary information; it is not an occasion to relitigate facts or determinations made in the earlier criminal proceeding.
Id. at 689. Thus, under this approach, the first two steps hew closely to the Shepard/Taylor categorical and modified categorical approaches. It is only the third step that moves beyond the modified categorical approach, permitting immigration judges to examine additional evidence in cases where the first two steps fail to provide a definitive answer to the moral turpitude inquiry “if doing so is necessary and appropriate to ensure proper application of the Act’s moral turpitude provisions.” Id. at 699. This language does not create an open-ended and unworkable approach, but rather limits the immigration judge’s ability to consider additional evidence, prohibiting the judge from engaging in fishing expeditions.[5]
The majority concludes that the term “convicted” unambiguously requires the categorical approach and, accordingly, that there is no gap for the Attorney General to fill. The majority further concludes that the phrase “crime involving moral turpitude” does not create any ambiguity because “involving” does not counsel an individualized approach.
I agree with the majority that the term “convicted” is unambiguous, but I do not agree that its appearance in a statute unambiguously requires immigration judges to apply the categorical approach to the moral turpitude provisions. Instead, the statute is simply silent as to what approach immigration judges may use in applying the “moral turpitude” provisions. I would defer to the Attorney General’s opinion in Silva-Trevino, which represents *490 a measured approach to determining whether an alien was convicted for a “crime involving moral turpitude.” Several reasons lead me to this conclusion.
First, the bases for applying the categorical approach are inapplicable in this setting. The Taylor/Shepard approach was created for application in criminal sentencings “out of desire for the ‘avoidance of collateral trials,’” or the “specter of mini-trials,” United States v. Dean, 604 F.3d 169, 175 (4th Cir.2010) (quoting Shepard, 544 U.S. at 23, 125 S.Ct. 1254), and the “allocation of tasks between judge and jury under the sixth amendment,” Ali, 521 F.3d at 741. Of course, “[njeither of these reasons applies to immigration proceedings.” Id. Cf. United States v. Savillon-Matute, 636 F.3d 119, 123 n. 6 (4th Cir.2011) (noting doubt about continuing vitality of categorical approach in Sentencing Guidelines for same reasons); Dean, 604 F.3d at 173-74 (noting Shepard’s Sixth Amendment rationale no longer applicable to advisory Sentencing Guidelines). Immigration proceedings are civil, not criminal, thus negating any Sixth Amendment concerns, “[a]nd how much time the agency wants to devote to the resolution of particular issues is, we should suppose, a question for the agency itself rather than the judiciary.” Ali, 521 F.3d at 741. The efficient operation of the executive branch is simply not the judiciary’s responsibility. See Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 544, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) (“[T]he agency should normally be allowed to exercise its administrative discretion in deciding how, in light of internal organization considerations, it may best proceed to develop the needed evidence.”) (internal quotation marks omitted); Blanco de Belbruno, 362 F.3d at 280 (noting that “how [the Attorney General] allocates those resources to address the burden of increasing claims is a calculation that courts should be loathe to second guess”). Thus, because the bases for Shepard and Taylor are inapplicable in the immigration context, I do not believe Congress’s use of the term “convicted” necessarily requires the categorical approach.[6]
Second, I believe recent Supreme Court precedent weakens the argument that the categorical approach is required for the moral turpitude provisions. In Nijhawan, the Court was tasked with answering whether to apply the categorical approach in the immigration context to determine if a prior conviction was for “an offense that ... involves fraud or deceit in which the *491 loss to the ... victims exceeds $10,000.” 8 U.S.C. § 1101(a)(43)(M)(i). The Court began by noting the “interpretive difficulty” the statute posed was due to the fact “that in ordinary speech words such as ‘crime,’ ‘felony,’ ‘offense,’ and the like sometimes refer to a generic crime, say, the crime of fraud or theft in general, and sometimes refer to the specific acts in which an offender engaged on a specific occasion.” Nijhawan, 129 S.Ct. at 2298. The Court explained that if the statute referred to a “generic” crime, the categorical approach was appropriate, but that if the statute was “referring to the specific way in which an offender committed the crime on a specific occasion,” then the Court “must look to the facts and circumstances underlying an offender’s conviction.” Id. at 2298-99.
The Nijhawan Court ultimately concluded that § 1101(a)(43)(M)(i) required a “circumstance-specific” approach, not the Shepard/Taylor categorical approach. Id. at 2301. The Court found that the use of “in which” counseled for such an approach and further noted that very few state or federal statutes specifically have a $10,000 threshold as an element of the offense, thus distinguishing the provision from the types of “generic” offenses listed in the ACCA. Id. at 2301-02.
Relying on Nijhawan, both the Fifth Circuit and our own court recently noted that the categorical approach is not always required in immigration cases. See Salem v. Holder, 647 F.3d 111, 119 (4th Cir.2011) (declining to apply categorical approach to an alien’s burden of production and noting “the Supreme Court has expressed some reservation about a wholesale adoption of the categorical approach in the immigration context”); Bianco v. Holder, 624 F.3d 265, 272-73 (5th Cir.2010) (noting that court had previously applied the categorical approach to the moral turpitude provisions but nonetheless applying circumstance-specific approach to determine whether an alien had been “convicted of ... domestic violence”).
Like the provision at issue in Nijhawan, the moral turpitude provisions have no analogue in federal or state criminal statutes and “moral turpitude” is not an element of any offense. In addition, the presence of the word “involving,” like the phrase “in which” at issue in Nijhawan, suggests a more individualized approach.[7] In sum, “[t]he need to decide whether a crime is one of ‘moral turpitude’ does not have a parallel in criminal cases,” because “ ‘moral turpitude’ just isn’t relevant to the criminal prosecution; it is not as if ‘turpitude’ were an element of an offense.” Ali, 521 F.3d at 741-42.[8] In my view, the phrase “crime involving moral turpitude” “cannot possibly refer to a generic *492 crime.... because there is no such generic crime.” Nijhawan, 129 S.Ct. at 2300-01.
In light of these factors, and with due regard for the level of deference owed to the Attorney General in immigration matters, I believe that immigration judges have “the discretion to consider evidence beyond the charging papers and judgment of conviction” ■ in determining if an alien was convicted of a crime involving moral turpitude, Ali, 521 F.3d at 743. Therefore, I would defer to the Attorney General’s approach in Silva-Trevino. See Mata-Guerrero v. Holder, 627 F.3d 256, 260 (7th Cir.2010) (deferring to Silva-Trevino).
III.
Applying Silvar-Trevino to this case, I would deny Prudencio’s petition for review. Prudencio pled guilty to one count of violating Va.Code Ann. § 18.2-371, which provides:
Any person 18 years of age or older, including the parent of any child, who (i) willfully contributes to, encourages, or causes any act, omission, or condition which renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in § 16.1-228, or (ii) engages in consensual sexual intercourse with a child 15 or older not his spouse, child, or grandchild, shall be guilty of a Class 1 misdemeanor.
Subsection (ii) encompasses crimes involving moral turpitude, while subsection (i) does not. The Government introduced the following evidence to prove Prudencio’s conviction: the police incident report; the warrant for carnal knowledge, without force, of a 13-year-old child; and the court form showing Prudencio’s guilty plea to contributing to the delinquency of a minor. Nothing in these documents conclusively shows whether Prudencio pled guilty to subsection (i) or (ii), so I believe the immigration judge was permitted to advance to the third step of Silvar-Trevino. Applying that step, the police incident report serves as proof that Prudencio was convicted of a crime involving moral turpitude: as a 20-year-old he had sexual intercourse with a 13-year-old, infecting her with a sexually transmitted disease. Prudencio’s crime is the kind of “vile” or “depraved” act the moral turpitude provision was enacted to address. ■
IV.
In sum, I disagree with the majority that the term “convicted” requires unyielding adherence to the categorical approach to a provision that is not in the Armed Career Criminal Act and does not list a “generic” offense. Instead, I believe the statute is silent as to what procedures an immigration judge may use to determine if an alien was “convicted” of a “crime involving moral turpitude,” and I would defer to the Attorney General’s approach in SilvarTrevino. In reaching a contrary conclusion, I believe the majority has operated a significant shift in the law by dictating to th.e executive branch’s immigration judges how they may use their administrative resources, and in turn ensuring that some immigrants whose convictions were for crimes involving moral turpitude — like Prudencio — remain in the country. It is difficult to believe that Congress intended for courts to straitjacket immigration courts with a doctrine based on concerns peculiar to the federal judiciary to enable individuals who infect underage girls with sexually transmitted diseases to avoid removal by pleading guilty to an overbroad statute that includes both crimes involving moral turpitude and crimes that do not. For the foregoing reasons, I respectfully dissent.

. Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 278 (4th Cir.2004) (quoting Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (internal quotation marks omitted)); see also INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (quoting INS v. Abudu, 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988) (“[judicial *487 deference to the Executive Branch is especially appropriate in the immigration context where officials ‘exercise especially sensitive political functions that implicate questions of foreign relations.’ ”)).

. The twelve judges who participated in Vann accounted for a total of six opinions plus a per curiam opinion announcing the judgment of the court.

. In fact, it was the categorical approach’s uncanny ability to sow confusion and create circuit splits that prompted the Attorney General’s decision to implement a uniform framework for the moral turpitude provisions in Silva-Trevino.

. In determining that the statutory language permitted this approach, the Attorney General relied on the Seventh Circuit’s opinion in Ali and the BIA’s opinion in Matter of Babaisakov, 24 I. & N. Dec. 306 (BIA 2007), which adopted a circumstance-specific approach to 8 U.S.C. § 1101(a)(43)(M)(i).

. In addition to this limitation, the BIA and immigration judges also would be required to apply "fundamentally fair procedures” in receiving additional evidence. Nijhawan v. Holder, 557 U.S. 29, 129 S.Ct. 2294, 2303, 174 L.Ed.2d 22 (2009).

. The majority, and the Third and Eleventh Circuits, in Jean-Louis v. Attorney General, 582 F.3d 462 (3d Cir.2009), and Fajardo v. U.S. Atty. Gen., 659 F.3d 1303 (11th Cir.2011), also rely on the fact that courts have long applied what has been called a traditional or categorical approach in immigration proceedings. Under Nat'l Cable & Telecomm. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005), "[a] court’s prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.” Id. at 982, 125 S.Ct. 2688. In this situation, “that’s not what [earlier caselaw] say[s].... [It] just carr[ies] over to immigration proceedings an approach familiar to the federal judiciary from criminal prosecutions.” Ali, 521 F.3d at 743.
It is somewhat ironic that one of the first reported cases applying the categorical approach, United States ex rel. Mylius v. Uhl, 210 F. 860 (2d Cir.1914), concluded the approach was necessary, in part, to guarantee the "uniform and efficient administration of the law,” id. at 862, and to prevent the "manifestly unjust” result of "exclud[ing] one person and admitting] another where both were convicted of [the same crime],” id. at 863. Of course, as the Attorney General recounted in Silva-Trevino, the categorical approach causes the very problems it supposedly was created to address.

. The majority concludes that the word "involving” does not create any ambiguity in the statute because the entire phrase, "crime involving moral turpitude” is a term of art. The phrase simply cannot be viewed with such clarity. See Jordan v. De George, 341 U.S. 223, 235, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (Jackson, J., dissenting) ("It is not one which has settled significance from being words of art in the profession.”)

. For this reason, it is not practical for the majority to suggest that the burden is somehow on federal and state criminal prosecutors to alleviate the harshness of the majority's result by "ensuring that these aspects appear in the record of conviction." (Majority Op. at 483). Prosecutors have a difficult enough job, and I do not believe we should add to their burden by requiring that they ensure certain materials necessary for a civil proceeding that may (or may not) occur at some indeterminate point in the future are included in the record of conviction for the convenience of a court in another jurisdiction and another context. Instead, deferring to reasonable agency procedures to find this needed information provides the accepted and appropriate manner to address such situations.