PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2011
_____

RENE MONTES MAYORGA,
                         Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                         Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A073-960-159)
Immigration Judge: Honorable Margaret R. Reichenberg
_____

Argued:  April 8, 2014

Before:  HARDIMAN, SLOVITER and BARRY *Circuit Judges*

(Opinion Filed:  June 27, 2014)

David R. Fine, Esq.
Tad J. Macfarlan, Esq.      (**Argued**)
K&L Gates
17 North Second Street
18th Floor
Harrisburg, PA  17101
    Attorneys for Petitioner[1]

Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Gary J. Newkirk, Esq.
United States Department of Justice
Office of Immigration Litigation,
   Civil Division
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044

Anthony P. Nicastro, Esq.      (**Argued**)
United States Department of Justice
Office of Immigration Litigation
450 5th Street, N.W.
Washington, D.C.  20001
    Attorneys for Respondent

---

[1] The attorneys for petitioner have been acting pursuant to this court's order granting petitioner's motion to proceed in forma pauperis, and the judges of this court are in debt to those attorneys.  We also thank the K&L Gates law firm for permitting them to offer their service.  Lawyers who act in that capacity fulfill the highest service that members of the bar can offer needy parties and the legal profession.

---

O P I N I O N
_____

Sloviter, *Circuit Judge.*

     This case gives this court another opportunity to analyze the meaning of a Crime Involving Moral Turpitude ("CIMT"), a provision of the Immigration and Nationality Act ("INA"), INA § 212(a)(2)(A)(i)(I); 8 U.S.C § 1182(a)(2)(A)(i)(I).[2] Before we reach that issue, we must decide whether the Immigration Judge ("IJ"), as affirmed by

---

[2] The IJ had authority to order Mayorga removed from the United States following proceedings conducted pursuant to INA § 240; 8 U.S.C. § 1229a. The BIA had jurisdiction to hear Mayorga's appeal pursuant to INA § 103; 8 U.S.C. § 1103, and 8 C.F.R. § 1003.1. We have jurisdiction to review a final removal order from the BIA pursuant to INA § 242(a)(1); 8 U.S.C. § 1252(a)(1). Because one ground for Mayorga's removal is his conviction for a CIMT, our jurisdiction is limited by the REAL ID Act to "constitutional claims or questions of law" raised by the appeal. *Roye v. Att'y Gen.*, 693 F.3d 333, 339 (3d Cir. 2012) (citation omitted); *see* INA § 242(a)(2)(D); 8 U.S.C. § 1252(a)(2)(D). The question of whether Mayorga's conviction was for a CIMT is a question of law. We review constitutional and legal questions *de novo*, though "subject to the principles of deference articulated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984)." *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir. 2008).

3

the Board of Immigration Appeals ("BIA"), was correct in finding that Petitioner Rene Montes Mayorga ("Mayorga") had violated a statute that categorically involves moral turpitude by firearms dealing without a license, thereby rendering him inadmissible for life.[3]  Assuming the IJ is correct in her determination that Mayorga is inadmissible for life under that statute, we must next consider whether that determination results in an "adverse consequence" for Mayorga, even though he is otherwise inadmissible and removable on the basis of an uncontested ground.  Finally, if we do decide that the IJ erred in finding that Mayorga had committed a CIMT and agree with the appellant that the CIMT finding would result in an adverse consequence so that this case presents an Article III, § 2 case or controversy, we must determine whether to decide the legal issue ourselves or to remand this case to the BIA.  We turn to consider these difficult issues.

---

[3] While INA § 212(a)(2)(A)(i)(I) does not explicitly state that an alien who has been convicted of a crime involving moral turpitude is barred from admission to the United States "for life," such an alien is rendered inadmissible from the time of the conviction (assuming that narrow exceptions found in INA § 212(a)(2)(A)(ii), which are not relevant here, do not apply) unless a purely discretionary waiver is granted. Despite the lack of explicit language, the consequence of a conviction for a crime involving moral turpitude is a lifetime ban on admission to the United States in nearly all cases, and the decisions so hold.  *See, e.g.*, *Ali v. Mukasey*, 521 F.3d 737, 739 (7th Cir. 2008).

4

I.

Mayorga is a native of El Salvador.  He entered the United States as a teenager in 1988 without inspection and without being paroled.  Though there is some dispute about the exact events triggering Mayorga's flight to the United States, it is clear that a desire to flee the then on-going civil war in El Salvador was a precipitating cause.  Mayorga filed an application for asylum in 1995, and has had work authorization since that time.[4]  He is married to a U.S. citizen and has five children under the age of fifteen—three biological children and two step-children.  All of the children are U.S. citizens.

On June 16, 2010, Mayorga pled guilty in the United States District Court for the Northern District of California to engaging in the unlicensed business of firearms dealing, in violation of 18 U.S.C. §§922(a)(1)(A) and (a)(2).  *See* App. 8.  Mayorga was sentenced to forty-six months in prison for the offense, eventually serving only seven months of the sentence in federal prison in California.  On February 24, 2012, the day he was released from prison, the Department of Homeland Security ("DHS") served Mayorga with a notice to appear ("NTA") before an IJ for removal proceedings under INA § 240.  The NTA alleged that Mayorga was inadmissible, and therefore removable from the United States on two grounds: first, under INA § 212(a)(6)(A)(i); 8 U.S.C. §1182 (a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled, and second, for having been convicted of a CIMT under INA § 212(a)(2)(A)(i)(I).

---

[4] It is not clear from the record below why Mayorga's original asylum application never proceeded to a merits hearing.

Mayorga's conviction relating to the unlicensed business of firearms dealing was the basis for the CIMT charge. DHS determined that Mayorga should be detained during the proceedings and he was held in a detention center in Newark, New Jersey during his removal proceedings. Mayorga remains detained pending removal in the Etowah County Detention Center in Gadsen, Alabama, pursuant to INA § 241(a)(2); 8 U.S.C. § 1231(a)(2).

At his removal hearing before the IJ, Mayorga conceded his removability under INA § 212(a)(6)(A)(i) as an alien present in the United States without having been admitted or paroled, but contested his removability for having been convicted of a CIMT. Mayorga also applied for cancellation of removal, voluntary departure, asylum, withholding of removal, and withholding of removal under the Convention Against Torture ("CAT"). The IJ denied each of Mayorga's applications. She noted Mayorga's conceded removability under INA § 212(a)(6)(A)(i), and held that Mayorga had been convicted of a crime which was categorically a CIMT. The IJ denied Mayorga's application for cancellation of removal on the ground that Mayorga had been convicted of an offense under INA § 212(a)(2) (crimes involving moral turpitude). INA § 240A(b)(1)(C); 8 U.S.C. § 1229b(b)(1)(C).[5] The IJ held that because Mayorga had been

---

[5] Even if we conclude that Mayorga's crime was not categorically a crime involving moral turpitude, he would likely be ineligible for cancellation of removal under the "person of good moral character" requirement. *See* INA § 240A(b)(1)(B); 8 U.S.C. § 1229b(b)(1)(B) and INA § 101(f)(7); 8 U.S.C. § 1101(f)(7) ("For the purposes of this chapter — No person shall be regarded as, or found to be, a

6

imprisoned for seven months, he could not meet the "person of good moral character" requirement for voluntary departure. INA § 240B(b)(1)(B); 8 U.S.C. § 1229c(b)(1)(B). The IJ also denied Mayorga's applications for asylum, withholding of removal, and withholding of removal under the CAT.[6]

Mayorga appealed the IJ's denial of cancellation of removal on the basis that he had been convicted of a CIMT to the BIA. The BIA issued a brief opinion which did not discuss whether Mayorga's crime was categorically a CIMT, but which did agree with the IJ that Mayorga's conviction did render him ineligible for cancellation of removal. *See* App. 22-25. Mayorga appealed the BIA's decision to this court.

## II.

The Attorney General argues that because Mayorga is concededly removable on the uncontested charge as an alien present in the United States without being admitted or paroled, we should not reach the question of whether his conviction is a CIMT. (Appellee's Br. at 13) Inasmuch as the question of the justiciability of Mayorga's claim is a

---

person of good moral character who, during the period for which good moral character is required to be established, is, or was — . . . one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more. . .").

[6] As Mayorga does not appeal the IJ's determination on his applications for asylum, withholding of removal, and withholding under the CAT in the proceedings before this court, we need not address those issues.

threshold issue, we need to discuss it before turning to the subsequent questions. At the outset, we recognize that Mayorga conceded that he was removable as an alien present in the United States without having been admitted or paroled; moreover, his term of imprisonment prevents him from meeting the "good moral character" standards for cancellation of removal and voluntary departure. Mayorga thus faces removal and a ten-year bar on returning to the United States regardless of whether his conviction was for a crime which is categorically a CIMT. INA § 212(a)(9)(A)(ii)(I), (II); 8 U.S.C. §1182(a)(9)(A)(ii)(I), (II).[7] Therefore, even if we decide that Mayorga's conviction was not for a crime which is categorically a CIMT, our interpretation of a CIMT will not have an immediate impact on his ability to remain in or return to the United States. The government, however, contends that any decision we might issue in this case is a disfavored advisory opinion. We do not agree.

The Supreme Court has held that "collateral consequences" can justify a suit when the consequences would lead to "concrete and continuing injury." *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Injuries that are merely speculative could not justify suit in cases such as this one, where the most immediate and direct harm that flows from a CIMT conviction—removal from the United States—would apply anyway. Although Mayorga would be inadmissible for a significant period of time on the basis of either ground for

---

[7] This ten-year bar is waiveable on the consent of the Attorney General, but such waivers are not common, and are granted only as a matter of discretion. This use of discretion is not reviewable by a court. INA § 242(a)(2)(B)(i); 8 U.S.C. § 1252(a)(2)(B)(i).

removal, the additional harm caused by a lifetime ban, as opposed to a ten-year bar, is certainly "concrete and continuing," meeting the standard set out in *Spencer*. Furthermore, there is nothing "speculative" about the difference between a lifetime ban and a ten-year bar.

The significant, concrete, and continuing detriment that Mayorga faces if we approve the IJ's determination that his crime was categorically a CIMT refutes the government's contention that any ruling on this matter would be a mere advisory opinion. As noted, if the crime Mayorga was convicted of is categorically a CIMT, he faces a potential lifetime ban on admissibility to the United States. INA § 212(a)(2)(A)(i)(I).[8] In contrast, if Mayorga is "merely" removable for being present in the United States without having been admitted or paroled, he would be eligible to seek admission after ten years. INA § 212(a)(9)(A)(ii). The difference between these scenarios is not speculative.[9]

---

[8] *See* note 3, *supra*.

[9] The Dissent appears to suggest that we should await the expiration of the 10-year ban which would follow from Mayorga's illegal presence offense before considering the CIMT issue. This ignores our recent opinion in *Cadapan v. Att'y Gen.*, No. 13-1944, 2014 WL 1064135 (3d Cir. May 9, 2014). The path proposed by the Dissent would be incompatible with *Cadapan,* where the BIA argued, and we held, that we had reason to address whether an alien, concededly removable on other grounds, had been convicted of an aggravated felony because of this determination's "impact on his…ability to re-immigrate to the United States after removal." *Id.* at *1 n.1." Our opinion was unanimous.

9

Mayorga also easily meets the requirement set out in *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990), that "a litigant must . . . be threatened with[] an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision" (citations omitted).  Here Mayorga is threatened with a lifetime ban on reentry to the United States—surely an "actual injury"—which would be traceable to the IJ's decision on the CIMT charge, and would be redressable by a favorable decision from this court.  As the Supreme Court has elsewhere noted, when "the plaintiff is himself an object of the action . . . at issue . . . . there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing or requiring the action will redress it."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).[10]

The government further contends that any harm to Mayorga is made "less concrete and more tenuous" by the fact that he could apply for a waiver of inadmissibility.

---

[10] The Dissent claims that Mayorga fails to meet the causation requirement set out in *Lujan*.  This is incorrect.  If we do not decide this issue, the IJ's determination that Mayorga was convicted of a CIMT will stand, and he will therefore likely be held inadmissible.  *See* INA § 212(a)(2)(A)(i). We have heretofore held that *res judicata* and collateral estoppel apply to agency decisions.  *See Duhaney v. Att'y Gen.*, 621 F.3d 340, 347-48 (3d Cir. 2010).  Inadmissibility is distinct from removability, and absent a decision from this court, would apply to Mayorga even if he had been granted voluntary departure, and therefore was not removed at all.

While such a waiver is conceivably possible, *see* INA §
212(h); 8 U.S.C. § 1182(h), it is completely discretionary.
Discretionary decisions by the Attorney General in this area
are not subject to judicial review. INA § 242(a)(2)(B)(i).
The bare possibility of a waiver cannot, therefore, render the
harm to Mayorga "tenuous." The government also suggests
that any harm Mayorga might face is "remote and tenuous"
because any possible return to the United States by Mayorga
would be conditional on his obtaining a visa. Although it is
true that Mayorga would need to obtain a visa to re-enter the
United States, the fact that he is an immediate relative of a
U.S. citizen (his wife), and the father of U.S. citizen children,
makes the possibility of obtaining a visa after the passing of
the ten-year bar a real possibility, not a mere theoretical one.
The government's argument here, therefore, fails as well.

This court has not yet had the opportunity to address
the particular sort of justiciability issue raised by Mayorga,
but when we have considered somewhat similar
circumstances, we have consistently taken into account the
collateral consequences of IJ decisions. *See, e.g., Steele v.
Blackman*, 236 F.3d 130, 134 n.4 (3d. Cir. 2001) ("Erroneous
conviction of an aggravated felony will have several
continuing and serious legal consequences . . . including
serving as a permanent bar preventing his return to the United
States to visit his family."). In earlier cases such as *Steele*,
however, the IJ decision that the petitioner sought to have
overturned had not only the collateral consequence of a
lifetime ban on entry to the United States, but also the direct
consequence of ruling on the merits of the petitioner's
removal. *Steele* therefore differs from the present case in an
important way, and cannot on its own establish that
Mayorga's petition is justiciable. However, while we cannot

11

and do not rely merely on *Steele* here, it does provide further support for Mayorga's contention that significant collateral consequences in an immigration case, such as the lifetime ban on entry to the United States at issue here, render his petition justiciable. *See also Alwan v. Ashcroft*, 388 F.3d 507, 510-11(5th Cir. 2004); *Kamagate v. Ashcroft*, 385 F.3d 144, 149-51 (2d Cir. 2004); *Tapia Garcia v. I.N.S.*, 237 F.3d 1216, 1218 (10th Cir. 2001); *Chong v. District Dir., I.N.S.*, 264 F.3d 378, 383-86 (3d Cir. 2001). For these reasons, we hold that we may hear Mayorga's challenge to the merits of the IJ's CIMT determination, and will now turn to that issue.

## III.

Mayorga pled guilty to violating 18 U.S.C. § 922(a)(1)(A), which criminalizes engaging in the business of importing, manufacturing, or dealing in firearms without the appropriate license, ("It shall be unlawful for any person—(A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearms in interstate or foreign commerce") and 18 U.S.C. § 922(a)(2), which provides that it is unlawful for a licensed importer, manufacturer, dealer, or collector to ship or transport any firearm across state lines to a person who does not have the appropriate license ("(2) for any importer, manufacturer, dealer, or collector licensed under the provisions of this chapter to ship or transport in interstate or foreign commerce any firearm to any person other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector"). No evidence about the underlying facts leading to Mayorga's plea agreement with the government was

12

introduced at the removal proceedings, although we note that the IJ devoted much of her opinion to the underlying facts Mayorga asserted in support of his various motions and petitions to avoid removal.

In her opinion issued at the end of removal proceedings, the IJ declared that Mayorga's offense was a "*malum in se* crime which involves moral turpitude*,*" and that it was "not a petty offense because he was sentenced to 46 months in prison," and that Mayorga was therefore inadmissible. *See* App. 9, 10. The IJ further stated that

> The respondent's offense is a *malum in se* crime which involves moral turpitude. Certain commercial trades require a license due to their inherent potential risk to the public welfare, health, and safety, and the Court would include unlicensed dealing in firearms in that category. Just as selling illegal controlled substances without a license creates a public risk, so does, by its very nature, illicit dealing in firearms without a license. The respondent's decision to circumvent the government's need to track the dealing of weapons is categorically turpitudinous.

*See* App. 9.

While "moral turpitude" has long been a problematic notion, both the BIA and this court have held that it is "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed to other persons, either individually or to society in general." *Totimeh v. Att'y Gen.*, 666 F.3d 109, 114 (3d Cir. 2012) (quoting *Knapik v. Ashcroft*, 384 F.3d 84, 89 (3d Cir. 2004)). Furthermore, "[i]t is the nature of the act itself and not the

13

statutory prohibition of it which renders a crime one of moral turpitude." *Totimeh*, 666 F.3d at 114 (quoting *Matter of Flores*, 17 I. & N. Dec. 225, 227 (BIA 1980)).

In deciding whether an alien's criminal conviction is for a CIMT, we apply the "categorical" approach. *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 465-66 (3d Cir. 2009). Following this approach, we "look to the elements of the statutory. . . offense, not to the specific facts, reading the applicable statute to ascertain the least culpable conduct necessary to sustain a conviction under the statute." *Id.* (internal quotation and citation omitted). The "possibility of conviction for non-turpitudinous conduct, however remote, is sufficient to avoid removal." *Id.* at 471.[11]

On its face, the crime Mayorga was convicted of is a regulatory/licensing offense. While the IJ stated that Mayorga's crime was *malum in se*, or inherently wrongful, such a conclusion is highly dubious, and inconsistent with precedent. In *Matter of Abreu-Semino*, 12 I. & N. Dec. 775, 776 (BIA 1968), a long-standing BIA precedential opinion, the BIA held that "the violation of a regulatory, or licensing,

---

[11] On occasion, we may apply a "modified categorical" approach, "examining the record of conviction for the narrow purpose of determining the specific subpart [of a statute containing disjunctive elements] under which the defendant was convicted." *Jean-Louis,*. 582 F.3d at 466 (citation omitted). However, the relevant statutes in this case are not obviously divisible, and no record evidence, such as an indictment or sentencing memorandum, was introduced by the government in the proceedings below, further foreclosing this possibility.

14

or revenue provision of a statute is not a crime involving moral turpitude" (citation omitted). This is consistent with our recent decision in *Totimeh*, where we held that failure to register under a state predatory offender registration statute is not categorically a CIMT, even though conduct indirectly regulated by the registration requirement, sexual violence, would be a CIMT. *Totimeh*, 666 F.3d at 116. The conclusion that Mayorga's crime of conviction is not categorically a CIMT is further buttressed by the Seventh Circuit's decision in *Ali v. Mukasey*, 521 F.3d 737 (7th Cir. 2008). There, when evaluating whether conspiracy to violate 18 U.S.C. § 922(a)(1)(A) constituted a CIMT, the Seventh Circuit held that "Licensing of dealers . . . of firearms is a recent development . . . . [t]he choice between licensing (a form of limited control before the fact) and punishment for misuse of firearms is not an obvious one." *Id.* at 740.

We recognize that the intentional violation of even regulatory offenses might involve significant moral content,[12] but our application of the categorical approach, forecloses this line of reasoning in this case. Mayorga's crime of conviction is obviously one that could be violated unintentionally and in a non-turpitudinous manner. For example, a dealer who inadvertently let his or her license lapse would be in violation of 18 U.S.C. § 922(a)(1)(A). Given these facts, we cannot sustain the IJ's determination that Mayorga's crime of conviction was categorically a CIMT.

---

[12] *See* Stuart P. Green, *Why it's a Crime to Tear the Tag off a Mattress: Overcriminalization and the Moral Content of Regulatory Offenses*, 46 Emory L.J. 1533 (1997) (explaining how *malum prohibitum* offenses may have significant moral content).

IV.

The final question we must face is what disposition is appropriate. The BIA, in its review of the IJ's decision, provided only cursory discussion of the CIMT issue, and the government contends that we should therefore remand the issue to the BIA so that it may decide the issue. Remand to the BIA is, in this instance, unnecessary. The IJ, in her opinion, explains why she concluded that Mayorga's crime was a CIMT. Furthermore, though the BIA's discussion was cursory, it did note this part of the IJ's decision. *See* App. 23. In particular, one element of the BIA's opinion, agreeing with the IJ that Mayorga was ineligible for cancellation of removal under INA § 240A(b)(1)(C), specifically required accepting the IJ's conclusion that Mayorga was convicted of a CIMT. *See* App. 24.

Ideally, the BIA would have provided more analysis, explaining why it accepted the IJ's (erroneous) reasoning on the CIMT issue. However, the record does indicate that the BIA recognized the issue and therefore had opportunity to consider it. There is no indication in the BIA's decision that it had decided not to consider the issue. Rather, the best interpretation is that the BIA merely adopted the IJ's reasoning, which we have concluded was not persuasive. When the BIA adopts an IJ's reasoning without significantly adding to it, we may review the IJ's reasoning. *See Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004). Moreover, the issue of the scope of a CIMT is a legal one, and this court is the forum that must decide legal issues. There is therefore no reason to remand this case to the BIA.

V.

For the reasons stated above, we hold that Mayorga would suffer a serious adverse consequence if his crime of conviction were found to categorically be a CIMT, and that his challenge to the IJ's CIMT ruling is therefore justiciable. We further hold that the IJ and the BIA were incorrect in finding that Mayorga's crime of conviction was categorically a CIMT, and that there is no reason to remand the case to the BIA. We therefore grant the petition for review and reverse the BIA's conclusion that Mayorga is removable for having been convicted of a CIMT.

*Mayorga v. Attorney General United States,* No. 13-2011
HARDIMAN, *Circuit Judge*.

Petitioner Rene Montes Mayorga seeks review of an order of the Board of Immigration Appeals (BIA) because he claims it bans him from forever reentering the United States. In fact, the order under review has no effect on Mayorga's ability to reenter the country after ten years. Because the order Mayorga appeals from has not caused his stated injury, Mayorga lacks standing to challenge the agency's determination that he committed a crime involving moral turpitude (CIMT). For that reason, I would dismiss Mayorga's petition.

To establish standing Mayorga must show: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "To have standing at the appellate stage . . . a litigant must demonstrate 'injury caused by the judgment rather than injury caused by the underlying facts.'" *Tachiona v. United States*, 386 F.3d 205, 211 (2d Cir. 2004) (quoting 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3902, at 63 (2d ed. 1992)). Thus, Mayorga must show that the removal order caused the lifetime ban of which he complains.

Although the Immigration Judge (IJ) ordered Mayorga's removal from the United States, the lifetime ban was not at issue before the IJ nor the BIA. Although it is true that an IJ's holding that an alien committed a CIMT could result in a lifetime ban, that is only so when collateral

estoppel applies to the holding. Absent the collateral estoppel effect of a CIMT determination, causation is lacking.

In this case, the IJ's determination that Mayorga committed a CIMT has no collateral estoppel effect, as the Government rightly conceded at oral argument.[1] If, after his ten-year ban expires, Mayorga wishes to seek reentry into the United States, the IJ's CIMT determination would play no

---

[1] *See* April 8, 2014, oral argument audio recording at 6:54 and 8:20. The doctrine applies only when the legal issue was "essential to the judgment," *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979), and the CIMT determination was not essential to the judgment for either the IJ or the BIA. The Government asserted two grounds for Mayorga's removability: his unlawful presence in the United States, 8 U.S.C. § 1182(a)(6)(A), and his conviction for a CIMT, 8 U.S.C. § 1182(a)(2)(A)(i)(I). Mayorga conceded his removability for unlawful presence, and the IJ held him removable for both reasons. Mayorga then sought cancellation of removal, which the IJ denied for two independent reasons: his lack of good moral character as a matter of law, which Mayorga conceded, 8 U.S.C. § 1229b(b)(1)(B), and his conviction for a CIMT, 8 U.S.C. § 1229b(b)(1)(C). When the BIA reviewed Mayorga's removal order, it decided both his removability and ineligibility for cancellation of removal on the same grounds as the IJ. The BIA did not analyze the CIMT issue, nor was it necessary to do so to affirm the removal order. The BIA's failure to address the CIMT issue is unsurprising in light of the fact that Mayorga did not contest the point before the BIA.

role in the agency's analysis. [2] Accordingly, that determination did not cause his stated injury, a lifetime ban, so he lacks standing to petition this Court to review it.

The standing requirement is not an idle formality, as the procedural history of Mayorga's case demonstrates. By requiring litigants to demonstrate injury in fact, causation, and redressability, courts are protected from adjudicating issues that are not subject to vigorous, adversarial presentations that inform our judgments. *See Baker v. Carr*, 369 U.S. 186, 204 (1962). As I shall briefly describe, as it relates to the CIMT issue, Mayorga's case was the antithesis of the vigorous, adversarial presentation we typically see.

The parties gave the CIMT issue short shrift before the IJ. At one hearing, the Government was wholly unprepared to litigate the CIMT charge—arguing that the wrong crime was a CIMT until the IJ cut the lawyer off. At the next hearing, the Government gave a nine-sentence argument, relying only on an unnamed, unpublished decision of the BIA. Unbeknownst to the Government, the Seventh Circuit had already reversed the BIA in that case. *See Ali v. Mukasey*, 521 F.3d 737, 739–40 (7th Cir. 2008). Mayorga never countered the Government's hollow argument. Even worse, at a prior hearing, Mayorga actually conceded that he had been convicted of a CIMT (an admission the IJ declined to accept).

---

[2] Unlike this case, the legal issue appealed in *Cadapan v. Att'y Gen.*, 749 F.3d 157 (3d Cir. 2014), was essential to the judgment because the alien's aggravated felony was the sole ground upon which the BIA denied Cadapan "relief from removal." Because it was essential to the judgment, it had preclusive effect, i.e., effectively imposing a lifetime ban from re-entry. *Id.* at 158 n.1.

3

On this remarkably sparse record, the IJ held that Mayorga's firearms crime was a CIMT. Only three paragraphs in the IJ's fourteen-page decision discussed the CIMT issue, and its analysis adopts word-for-word the reasoning of the opinion of the BIA that was reversed by the Seventh Circuit in *Ali*.

Following Mayorga's appeal of the IJ's removal order, the BIA said nothing about whether it agreed with the IJ's CIMT analysis; it merely noted that determination in passing. This was no oversight by the BIA, since neither Mayorga's brief nor the Government's brief discussed the CIMT issue.[3]

After losing his appeal to the BIA, Mayorga filed a petition for review with this Court. In motions practice before us, Mayorga referenced various arguments, but never asked us to review the CIMT issue. Instead, the motions panel noticed the IJ's dubious CIMT reasoning and the Seventh Circuit's reversal of the case upon which the IJ had relied.[4] At

---

[3] Mayorga simply did not "appeal[] the IJ's denial of cancellation of removal on the basis that he had been convicted of a CIMT to the BIA." Op. at 6. Rather, he argued that "[t]he Immigration Judge as a matter of discretion should have granted [him] cancellation of removal . . . based on [his] non serious [sic] criminal history" and the hardship on his family. App. at 15. Mayorga never challenged the IJ's CIMT determination.

[4] Specifically, Mayorga filed motions for appointment of counsel and for a stay. Our decision on motions of this character turns on whether the movant has some probability of success on the merits. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). To answer that question, we reviewed the record below for potentially meritorious issues.

4

the same time, the motions panel recognized that the CIMT issue might not be justiciable, so we requested briefing on both the CIMT issue and its justiciability. Mayorga briefed both issues, but the Government demurred on the merits of the CIMT question, instead arguing that Mayorga's petition was not justiciable, and if it were, remand to the agency would be appropriate.

The Government's demurrer to our order is unsurprising since it never asked the agency to impose a lifetime ban upon Mayorga. Rather, it simply sought his removal from the United States. Once Mayorga conceded his unlawful presence in the United States and that he had been incarcerated for more than six months, the Government achieved its objective and it had no reason to press the CIMT issue.

For the reasons stated, I respectfully dissent.